No. 23,350.

ROBERT FARMER, *Appellee*, v. FRANK PURCELL, *Appellant*.

SYLLABUS BY THE COURT.

COMPENSATION ACT—*Injuries to Employee of Independent Contractor— Contractee Not Liable.* The owner of a sawmill had occasion to remove a quantity of sawdust that had accumulated. He arranged for his employees to feed it into a chute through which by an endless chain it was conveyed to an elevated bin from which it could be loaded into wagons by gravity. He contracted with a person to take it from the bin as fast as should be necessary to prevent such accumulation there as to delay the work, and remove it to a designated place, in consideration of the payment of a fixed price per hour. A driver employed by such person was injured while attempting to load a wagon from the bin and sued the mill owner under the compensation act. It is held that such person was an independent contractor and the plaintiff was not an employee of the defendant.

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed October 8, 1921. Reversed.

*W. L. Wood,* of Kansas City, for the appellant.
*L. O. Carter,* of Kansas City, for the appellee.

The opinion of the court was delivered by

MASON, J.: Robert Farmer sued Frank Purcell under the workmen's compensation act on account of an injury received at a time the plaintiff claims to have been employed by the defendant. The principal ground of defense was based upon the claim that at the time of the injury the plaintiff was not working for the defendant, but for an independent contractor, George E. Holter, who was doing a particular piece of work for the defendant under a special agreement. The plaintiff recovered judgment and the defendant appeals, his chief contention being that the evidence did not support a finding that the plaintiff was in his employ. The case was submitted to the jury under an instruction that if Holter was an independent contractor the plaintiff could not recover.

There is no substantial conflict in the evidence bearing upon the question at issue. The material facts as established by the evidence introduced by the plaintiff may be thus summarized:

The defendant had for some years been operating a sawmill and factory. A large quantity of sawdust had accumulated on the premises, which he desired to have removed. He caused to be constructed an elevated bin holding about four wagonloads, into which the sawdust was conveyed through a chute by an endless chain. Employees of the defendant fed the sawdust into the conveyor by means of horse-drawn scrapers. The bin referred to was so arranged that a wagon could be driven under it and filled with sawdust by drawing out a slide by means of a handle made of a piece of belting or rubber hose. The defendant by his superintendent entered into an agreement with Holter to pay him two dollars an hour to haul the sawdust away from the bin—to take it away as fast as it was fed into the bin irrespective of how many teams this would require—to keep the bin clear so long as the work of removing the heap of sawdust lasted. Holter arranged with O. H. Groomer to share the work with him on a fifty-fifty basis. The work was done in accordance with this agreement. Holter and Groomer each furnished one wagon and team. Holter hired the plaintiff to drive his wagon a part of the time, paying him 35 cents an hour, or $3.50 a day. The defendant paid Holter and Groomer by checks running to them jointly, and

Holter paid the plaintiff. The plaintiff was injured in this manner: He drove the wagon under the outlet of the bin and undertook to draw the slide. As he did so the handle broke and he fell from the wagon to the ground. In the original agreement between the defendant's superintendent and Holter it was specified that the sawdust was to be dumped one wagon-load deep clear across the tract on which it was to be deposited. Afterwards the superintendent, seeing that if this were done there would not be enough sawdust to fill up some low places, asked Holter to fill up one of them first, and this was done. He also asked to have a few of the loads dumped in the lumber-yard to make a road, and this also was done—according to his testimony as an accommodation to him. Except as has been stated the defendant or his superintendent exercised no control over the manner in which the work of hauling away the sawdust was carried on. The superintendent testified that he could have discharged Holter if he had failed to comply with his contract to keep the bin empty.

We do not regard these facts as establishing the relation of employer and employee between the defendant and the plaintiff. There is nothing to suggest any want of good faith in the arrangement entered into between the defendant and Holter, such as characterized the contract passed upon in *Nelson v. Cement Co.*, 84 Kan. 797, 115 Pac. 578; nor was the work in which the plaintiff was engaged intrinsically dangerous as in the case of the mining operations involved in *Laffery v. Gypsum Co.*, 83 Kan. 349, 111 Pac. 498. The carrying away of the sawdust was not a continuous feature of the ordinary operation of the defendant's business. Such an amount of sawdust had accumulated that it became necessary, or at all events desirable, that it should be removed. The defendant arranged for his employees to do the work necessary to convey it to the elevated bin, and contracted with Holter at a fixed rate per hour to see that it was removed from the bin to the dumping ground fast enough to prevent a delay in the work. The means of removal—the number of wagons used and the selection of drivers—were left with Holter. The agreement covered the getting the sawdust away from the bin during the whole period occupied by the operation of removing it from its original position. The testimony was that Holter could have been discharged at

any time, if he had failed to carry out his contract, the necessary implication being that he had a right to continue the wor˙˙ so long as it lasted provided he lived up to his agreement. Groomer testified that he and Holter continued to work till they got through the job; Holter that "they [referring to the defendant] took all the sawdust out they was going to take out; they changed their minds and didn't take it all out, and laid the teams off." To the question thus asked by the plaintiff (on direct examination), "Well, were you discharged or did you quit?" Holter answered, "We were not discharged; we were laid off, finished up." There was no other evidence on that feature of the case. The defendent had no control over or interest in the methods employed by Holter; he was concerned only with the results reached—the keeping of the bin empty (or in condition to receive the sawdust as it was fed in by the conveyor) and the dumping of the sawdust in the place that had been designated. The later indication of a somewhat different place for the disposal of a few loads, acquiesced in by Holter, whether as an accommodation or in recognition of a right on the part of the defendant to make such change, did not in our judgment amount to such a control of the method of reaching the result sought as to be inconsistent with the theory of an independent contract. Holter was at liberty to use his own teams or those of some one else; to drive them himself or hire any one he might choose for the purpose; and to do as he saw fit with his time, his implements and his employees, so long as he prevented the undue accumulation of the sawdust in the bin, and procured its deposit in the proper place on its removal therefrom.

We do not deem it advisable to review the many cases presenting facts more or less similar to those here involved, some falling on one side of the line and some on the other. A recent summary of the effect of the decisions is to be found in the article on Independent Contractors in Ruling Case Law (14 R. C. L. 65-108), and many cases involving the principle as applied to the workmen's compensation act are collected in 1 Honnold on Workmen's Compensation, § 66. The determining consideration is whether or not there was a control of methods as distinguished from results and we conclude that Holter was an independent contractor and that the plaintiff was not an

employee of the defendant. It follows that there can be no recovery in this proceeding.

We are not called upon to determine whether the defendant might be liable notwithstanding the plaintiff was the employee of an independent contractor, under the portion of the compensation act which reads:

"Where any person (in this section referred to as principal) undertakes to execute any work which is a part of his trade or business or which he has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him; . . . (d) This section shall not apply to any case where the accident occurred elsewhere than on or in, or about the premises on which the principal has undertaken to execute work or which are otherwise under his control or management, or on, in, or about the execution of such work under his control or management." (Gen. Stat. 1915, § 5898.)

The instruction of the trial court that no recovery could be had if Holter was an independent contractor has not been challenged, but has been accepted as the law of the case. The matter is mentioned only in order that the decision may not be regarded as placing an interpretation upon the statutory provisions just quoted.

If the action were one for an injury to the plaintiff through the negligence of the defendant an entirely different question would be presented. (*Railroad Co. v. Madden*, 77 Kan. 80, 93 Pac. 586; 14 R. C. L. 81.)

The plaintiff contends that error affecting the amount of the judgment was committed against him, but as we hold that no cause of action was established it is not necessary to determine what would have been the proper basis of recovery if our conclusion in that regard had been different.

The judgment is reversed and the cause is remanded with directions to render judgment for the defendant.