No. 24,901.

IRWIN DOHNER, *Appellant,* v. THE WINFIELD WHOLESALE GROCERY COMPANY and C. A. HARRIS, *Appellee.*

SYLLABUS BY THE COURT.

1. AUTOMOBILE ACCIDENT—*Negligence of Independent Contractor—Oral Contract as Salesman for Defendant—Relation of Parties a Question of Law.* Where there is no material conflict in the evidence with respect to the terms of an oral contract, and such terms are not in any respect ambiguous or uncertain, the relation of the parties to it is a question of law for the court.

2. SAME. A salesman who operates an automobile at his own expense, whose movements are not controlled by his employer, except that he shall make his territory once each week, is, with respect to the operation of the car, an independent contractor so that his employer is not answerable for injuries caused by his negligent operation of the car.

Appeal from Butler district court. ALLISON T. AYRES, judge. Opinion filed June 7, 1924. Affirmed.

*J. M. Pleasant,* of El Dorado, for the appellant.

*A. L. Noble, W. A. Ayres, Hal M. Black,* and *C. A. McCorkle,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one for personal injuries sustained by the plaintiff by being run over by an automobile driven by the defendant Harris. Trial was to the jury; verdict against both defendants for $1,800. The court, on consideration of a motion for a new trial by the grocery company, concluded that Harris was an independent contractor and that the grocery company was not liable. The motion for new trial was granted solely on that ground. The plaintiff appeals.

The plaintiff sought to hold the defendant grocery company responsible for the consequences of the negligence of Harris on the theory of *respondeat superior.*

The grocery company's place of business was at Wichita. It made an oral contract with Harris to canvass a certain prescribed territory covering sixteen or seventeen towns. Under the contract he was to take orders for goods and collect money for goods which had been delivered. He was to be paid a minimum compensation of $175 per month, and if he should produce more than a minimum amount of business his compensation was to be increased in the proportion that his sales should exceed the minimum amount. Out of such compensation Harris was to transport himself and pay all his expenses. He was at liberty to select any manner of transportation and any route and times of visiting the different towns that he chose, the only requirement being that he should call on the trade of the whole territory once each week.

The injury complained of occurred on the first day that he entered upon the execution of this contract. Harris provided himself with an automobile and started out on his territory Monday morning. The company provided him with samples and gave him a list of the merchants in his territory who had purchased goods the preceding week, and from whom, presumably, he was expected to collect. He was asked to try to open an account at Oil Hill, one of the towns on his territory.

He took a passenger with him for hire, who rode with him the entire trip over the territory that week and paid Harris for his transportation. The two had visited Benton, Towanda, Midian and Oil Hill, and were approaching El Dorado when the accident oc-

curred. The instructions submitted to the jury the question of whether the relation of master and servant existed between the grocery company and Harris, or whether the latter was an independent contractor; that, if the latter was the case, the grocery company would not be liable. The jury found that Harris was not an independent contractor.

The plaintiff contends that there was a dispute in the testimony as to the terms of the contract, and that therefore the question was properly for the jury; that the court committed error in setting aside the verdict and granting a new trial. The defendant contends that there was no conflict in the evidence as to the terms of the contract, and that therefore the legal relation of the parties was purely a question of law for the court. Two witnesses only testified concerning the contract.

Harris testified:

"It was stated that I was to have $175 per month salary and pay my own expenses. I was not to receive commissions on sales."

On cross-examination:

"I commenced working for $175 per month. There was an understanding that if I increased the business I was to get more."

Mr. Bevis, manager of the grocery company, testified:

"My arrangement with him was that he was to take it on the basis of $175, which would be merely a drawing account. We give the men $175 providing he produces on that territory. He would not get any more than $175 unless he produced a certain amount of business. . . . The arrangement with Harris was that we would give him $175 per month, and if he increased that business he would get more money on the same basis we paid for [our] other salesmen. . . . We gave him $175 per month."

There was no material discrepancy on this point. Nor does there appear any conflict in the testimony as to the order in which Harris should visit the towns.

Mr. Bevis testified:

"There was no requirement as to the order in which he made the towns, just so he made them and called on the trade. They had a routine ·way of making the towns. He was expected to make his own routine; in fact, I think he changed a time or two while he was on it."

Mr. Harris testified:

"There was no requirement in particular as to the order in which I was to visit towns. I was expected each week to visit the territory. . . . It was not particular whether I made it one day or the other, but I made it the same as the other men had been making it."

As to the manner of transportation, Harris testified:

"Q. Was there anything said between you and the company as to how you should travel? A. Nothing in particular. Mr. Bevis suggested that I could make the towns better and have more time with a car and he would like to have me travel that way. He didn't say I had to. He had stated to me that the towns could be made better if the salesman used an automobile. . . . The grocery company did not require me to own a car. I had my choice of going any way I chose. . . . When I started out the first day the company. furnished me with a list of the merchants who had bought goods of the company the week before, and that list included all merchants in my territory who had purchased the week before. There was nothing said about calling upon them, but I was supposed to call upon all trade in that territory regardless of whether they were on the list or some one else. I was furnished the list for the purposes of interviewing them and trying to sell them goods."

Mr. Bevis said:

"There was no requirement as to how he should transport himself. I probably did suggest that the train service be considered, and that if he got results it would probably be more economical and better for him if he got a car. . . . I did not require him to have a car, I merely suggested it."

In 14 R. C. L. 78 it is said:

"If the contract providing for the performance of certain work is in writing and is unambiguous, its construction is generally a question solely for the court. . . . In the case of an oral contract, if there is no material dispute in the testimony, whether the employee is an independent contractor may present a question for the court."

Serviceable notes on the subject are found in 65 L. R. A. 508, and 17 L. R. A., n. s., 382. The authorities are practically unanimous in holding that where there is no material conflict in the evidence with respect to the terms of a contract, and such terms are not in any respect ambiguous or uncertain, the meaning and effect of the contract, and the relation of the parties to it thereby created, is a question of law to be determined by the court. (*Green v. Soule,* 145 Cal. 96, 78 Pac. 337.)

In *Aldrich v. Tyler Grocery Co.,* 17 A. L. R. 617 (Ala.), it was said:

"A salesman employed on a commission basis, who owns and operates an automobile to assist him in seeking his trade, and whose movements are in no way controlled by his employer, is, with respect to the operation of the car, an independent contractor, so that his employer is not answerable for injuries caused by his negligent operation of the car."

In the opinion it was said:

"Shook was the grocery company's 'city salesman.' He alone owned and maintained the automobile causing the injury. He was compensated on a

commission basis. He was paid a percentage on orders taken and accepted. He received payment of bills due the grocery company and delivered such payments to it. The grocery company was only concerned in the result of his efforts as salesman. It did not control when, how or where he secured these orders, except he was not to work another salesman's trade in the territory he [Shook] was entitled to work. The method, means and occasions of his calls upon the trade were left entirely to him, uncontrolled by the grocery company. The facts that he was lame; that the company knew this fact; that the company knew when he first was engaged that he would and did afterwards visit the trade in a car of his own, maintained alone by him; and that on this occasion Page, his associate or successor as city salesman, was in the car when the injury occurred—did not operate, singly or otherwise, to change Shook's relation from that of an independent contractor to a servant to the grocery company as master in the operation of Shook's automobile on this occasion." (p. 620.)

See, also, *Farmer v. Purcell*, 109 Kan. 612, 201 Pac. 66; *Railway Co. v. Loosley*, 76 Kan. 103, 90 Pac. 990; 14 R. C. L. 74; *Pooler v. Lumber Co.*, L. R. A. 1915F 1125 (Me.).

In the instant case there was no material conflict in the evidence with respect to the terms of the contract. Under the facts and circumstances disclosed, Harris was an independent contractor. No error was committed by the court in setting aside the verdict and granting the grocery company a new trial.

The judgment is affirmed.