No. 29,126.

W. J. McCRANER, *Appellee*, v. R. A. NUNN and W. E. BOND, Partners as The Nunn-Bond Motor Company, *Appellants*.

(284 Pac. 603.)

Opinion filed February 8, 1930.

*H. W. Hart, Glenn Porter, Enos E. Hook, Edward H. Jamison* and *Getto McDonald*, all of Wichita, for the appellants.

*Chris L. Aikman, C. A. Matson, I. H. Stearns* and *E. P. Villepigue*, all of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to recover damages for injuries resulting from a collision of two automobiles at the intersection of roads in the country near Wichita. McCraner was driving a car from the north on Oliver street, and riding with him were his wife and two of their children. The other car was being driven by Clyde Jones, going from the east towards the west, upon what is called an extension of Twenty-first street. McCraner saw the Jones car, not only as he entered the intersection, but had noticed before that it was coming at a high rate of speed, which he believed at the time to be forty-five or fifty miles per hour. There was testimony tending to show that McCraner was driving at about twenty miles per hour as he approached the intersection. He could have stopped his car at a distance of eight feet, but did not attempt

to do so. After driving into the intersection he speeded up his car, but was struck by the Jones car and pushed in a southwest direction into the ditch. The jury found in favor of McCraner, and with their verdict the following special findings were returned:

"1. Did the plaintiff W. J. McCraner see the car driven by Clyde Jones when he, McCraner, was twenty feet from the intersection? A. Yes.

"2. If you answer the last question in the affirmative, state whether or not W. J. McCraner saw at that time that the Jones car was coming from the east at a high rate of speed. A. Yes.

"3. When W. J. McCraner first saw the Jones car coming from the east, could he have stopped his car or slackened the speed of his car and avoided the collision? A. Yes.

"4. Did W. J. McCraner make any effort to slacken his speed or avoid the injury? A. Yes.

"5. If you answer the last question in the affirmative, state what was done in this respect by the said W. J. McCraner. A. Increased his speed after he realized the danger.

"6. Did W. J. McCraner, after seeing the car driven by Jones approaching from the east, attempt to beat it across the intersection? A. Yes.

"7. If you find from the evidence that Clyde Jones was guilty of negligence in operating his automobile, state the acts upon which you base your finding of negligence. A. Excessive speed too close to the intersection and not watching for other traffic.

"8. If you answer question No. 1 in the affirmative, could McCraner by taking reasonable precaution have avoided the collision? A. No.

"9. If you find for plaintiff, state how much you allow him for: (a) Personal injuries [$500]; (b) medical and hospital expenses for W. J. McCraner [$250]; (c) medical and hospital expenses for Mrs. Opal McCraner [$50]."

One of the main points argued is that Jones was not the agent of the motor company, that was sued, but was engaged in selling cars for that company on commission. He purchased a car from the firm for which he paid cash, and which he used in the selling of cars. It will be observed that Jones was not made a party to the action, but that it was brought alone against the motor company. Among other things, they answered and defended upon the ground that Jones was not their employee or agent, had no authority to operate the car for them, and was not acting within any scope of their employment when the collision occurred. It was shown that the business arrangement between them was that Jones should operate his own car in selling automobiles and was to receive six per cent commission on the sales made. He was to receive in advance $25 per week, and when the sales were made he was to be paid the difference between the amount of the commission earned and the sum advanced. There was the further arrangement that he

would be furnished oil and gas up to the value of $15 per month. A dealer's license tag was attached to his car. Jones, who was a witness for plaintiff, stated that defendant did not have any right to control the car he was operating. "That he was allowed to hunt his own prospects, and go where and when he desired, and that there was never any restriction placed by Nunn and Bond about where he would go, how he would go to any certain place, or anything of that kind. That he could report in there when it was convenient for him." At times automobiles had been shown to prospects at defendants' garage, but whether shown there or demonstrated in other places, was a matter within the discretion of Jones. No control of any kind was exercised by the defendants. Under the facts about which there is no material dispute, Jones cannot be regarded as the agent or employee of defendant, but must be held to be an independent contractor. The demurrer to plaintiff's evidence should have been sustained. When it was overruled the court remarked that:

"On the question of the relationship of the driver of the car to the defendants, the same difficulty is presented. The law seems to be very much at variance in several states, and considering the whole matter, I am in doubt about the ruling that should be made in this case, and I am going to overrule the demurrer and let the case proceed to final trial, and then if the appellate court takes a different view, it can be disposed of by simply ordering a judgment in accordance with the views of that court, instead of another trial."

The testimony of defendants on this question was in substantial accord with that of plaintiff and therefore the matter of plaintiff's liability becomes a question of law for the court. The late case of *Dohner v. Grocery Co.*, 116 Kan. 237, 226 Pac. 767, is closely applicable to this one as to the principles of law involved. There a person riding in an automobile driven by a salesman of a grocery company was injured and sought a recovery of damages from the grocery company. The salesman was provided with certain samples and a list of merchants in the territory, was to receive a certain amount per month, but was to provide his own transportation, and to select any means of travel and any route, and the times of visiting the different towns that he chose, the only requirement being that he should call on the trade of the whole territory once each week. The court held that—

"A salesman who operates an automobile at his own expense, whose movements are not controlled by his employer, except that he shall make his territory once each week, is, with respect to the operation of the car, an inde-

pendent contractor so that his employer is not answerable for injuries caused by his negligent operation of the car."

In that opinion reference is made to *Aldrich v. Tyler Grocery Co.*, 206 Ala. 138, where a man named Snook, charged with a negligent injury in driving an automobile, had a business connection with a grocery company against which a recovery was sought. Snook was a salesman and operated on a commission basis, that is, a percentage of the orders taken and accepted. The company did not control his methods of work, the means he employed or the times he called on customers. In his work he used his own car and paid for its maintenance, and it was held that he was an independent contractor, and that the grocery company was not liable for negligent injury caused by him. In another case where it was a question of whether a relationship of the parties was that of master and servant or independent contractor, the court held:

"The real test as to whether a person is an independent contractor or a servant is whether the person alleged to be the master, under his arrangement with the other party, has or has not any authoritative control of the latter with respect to the manner in which the details of the work are to be performed, and, therefore, this test or element must, in the last analysis, always determine what was the essential nature of the relationship between the person who performed the given work and the person for whom it was performed.

"An independent contractor is one who, in rendering service, exercises an independent employment or occupation, and represents his employer only as to the results of his work, and not as to the means whereby it is to be accomplished. The chief consideration which determines one to be an independent contractor is the fact that the employer has no right of control as to the mode of doing the work contracted for.

"The test of control in such cases means complete control or the full and unqualified right to control and direct the details or of the means by which the work is to be accomplished.

"Neither the fact that a salesman uses the rooms of an automobile company's plant for showing automobiles to prospective customers he secures, nor the fact that his authority to act for the automobile company is evidenced by a printed card of the latter on which his name is printed, but on which the character of the relation maintained by him to the automobile company is not stated, possesses any significance as showing the nature of the contractual rela-. tionship between the parties, where the undisputed evidence discloses the terms of the agreement between them and thus the nature of the relationship which said agreement established between them." (*Barton v. Studebaker Corp.*, 46 Cal. App. 707.)

See, also, *Ramp et al. v. Osborne et al.*, 115 Ore. 672; *Premier*

*Motor Mfg. Co. v. Tilford,* 61 Ind. App. 164; *James v. Tobin-Sutton Co.,* 182 Wis. 36.

We conclude that Jones held the relation of independent contractor to the motor company and that the latter is not liable for injuries inflicted by Jones.

The judgment will therefore be reversed and the cause remanded with directions to enter judgment for the defendants.