## AMERICAN NAT. INS. CO. v. KENNEDY et al.

### No. 9918.

Court of Civil Appeals of Texas. San Antonio.

Jan. 27, 1937.

Rehearing Denied Feb. 24, 1937.

Lorimer Brown & Davis, of Harlingen, for appellant.

Leroy H. Buss, of Donna; and T. M. West and Nat L. Hardy, both of San Antonio, for appellees.

SMITH, Chief Justice.

The American National Insurance Company is appellant, and J. L. Kennedy and others are appellees.

The Insurance Company's general offices are located in Galveston, Tex. It has district offices at Harlingen, in Cameron county, and McAllen, in Hidalgo county. R. L. Wilson is a traveling inspector of the company, with headquarters in Galveston, and has been in its employ for fifteen years. He is paid entirely in salary, and receives no commission or other compensation from the company.

On February 5, 1935, while Wilson was en route, in his own automobile, which he was driving from Weslaco, in Hidalgo county, to McAllen, a distance of about seventeen miles, his car collided with that of appellees, resulting in personal injuries to appellees and property damage to their car. Appellees recovered judgment against Wilson's employer, the Insurance Company, based upon the negligence of Wilson in the operation of his car. The Insurance Company has appealed.

The first question presented in the appeal is that of whether the Insurance Company was liable for the negligent acts of Wilson, its employee, in the operation of his individual car, under the doctrine of respondeat superior.

The evidence established the facts that Wilson was a traveling inspector of company agencies, employed by appellant exclusively upon a salary; that Wilson was in appellant's Harlingen office on Saturday, February 3d, and had been instructed by his employer to report to its McAllen office at 8:30 a. m. the following Monday, February 5th; that in compliance with that instruction Wilson left Harlingen, in his own car, Sunday evening, spent that night at the home of his mother-in-law in Weslaco (on the direct federal highway from Harlingen to McAllen), and set out from Weslaco early the next (Monday) morning en route to McAllen. After going a few miles towards McAllen, his car collided with that of appellees, as a proximate result of his negligent operation of his car, according to justified findings of the jury.

It is undisputed that Wilson was a salaried, regular traveling employee of appellant, that he was using his own personal car in making the trip in question, and that he was en route to McAllen in response to the instructions of his employer to report there at that time upon his employer's business.

There was no evidence that he was required by appellant to use his own car in going about the company's business, or that he had been prohibited by appellant from using his own car on such business, or that appellant knew what means he usually employed in that business, or that he was, or was not, allowed by the company to choose and use whatever means of transportation his individual pleasure, convenience, or judgment might dictate.

There seems to be no doubt that considerable confusion, if not actual conflict, exists among the decisions of our courts in recent cases involving the liability of principals for the negligent acts of agents while engaged, *away from the principal's premises,* in furthering the business of the principal. In some cases the confusion— sometimes apparent conflict—arises in

classifying the actual wrongdoer as an agent, upon the one hand, or as the independent contractor, upon the other. In other cases, the confusion—sometimes apparent conflict—arises from the materiality accorded apparently minor details, which are in turn given controlling effect.

■ The question of independent contractor vel non does not appear to be in this case, for the record shows that the actual wrongdoer—laying aside, for the moment, the larger question of the liability of the principal—was not an independent contractor, in the usual application of that term; for he was burdened or blessed, as the case may be, with none of the attributes of such, except that which permitted him to use the physical means of his own choice in enabling him to do the work of his principal. He was an employee, a responsible agent, pure and simple, of appellant, his employer, *while actually and actively engaged in the very work to which he was assigned.*

The real question is, whether the responsibility and liability of his principal followed him to the remote point of accountability for the precise manner in which he operated his own personal car, selected and adopted by him upon his own motion for his own personal convenience and comfort in reaching points where his services were required by his principal. There is no evidence to show, nor do appellees contend, that appellant had any inherent right, or contractual authority, to direct its agent, the actual wrongdoer here, to use any particular means of transportation to and from the places where his employment called him; he was at liberty to travel by air, train, bus or his own motor vehicles, according to his own whim, caprice, judgment, discretion, or pleasure. The means he chose has no direct relation to the performance of his duties, which were, apparently, to contact and confer with local or district agents of his employer, located in its agencies in the cities assigned to him, for the character of the selected means of travel could have no effect upon the efficiency with which he performed his inspections of the company's agencies in those cities. The act of traveling between agencies could have no bearing upon, or relation to, his work within the confines of those agencies. The principal, in the absence of express contract, could not control the means of travel, nor was it concerned in the character of those

means, nor could it rationally be held liable for the purely personal acts of the agent while away from his principal's premises and employing those purely personal means. The idea is much more forcefully expressed by Judge German in the very recent case of American National Insurance Company v. Denke (Tex.Com. App.) 95 S.W.(2d) 370, 373. From that case, which is deemed precisely analogous, in principle, to this case, we quote at length:

■ "In section 250 of the Restatement of Law of Agency by the American Law Institute, it is said:

" 'Except as stated in section 251, a principal is not liable for physical harm caused by the negligent physical conduct of an agent, who is not a servant, during the performance of the principal's business, unless the act was done in the manner directed or authorized by the principal or the result was one intended or authorized by the principal.

" 'Comment:

" '(a) A principal employing another to achieve a result but not controlling nor having the right to control the details of his physical movements is not responsible for incidental negligence while such person is conducting the authorized transaction. Thus, the principal is not liable for the negligent physical conduct of an attorney, a broker, a factor, or a rental agent, as such. In their movements and their control of physical forces, they are in the relation of independent contractors to the principal. It is only when to the relationship of principal and agent there is added that right to control physical details as to the manner of performance which is characteristic of the relationship of master and servant, that the person in whose service the act is done becomes subject to liability for the physical conduct of the actor.' * * *

"This statement of the law is adopted by the court as applicable to these cases. * * *

■ "We are brought, therefore, to the precise inquiry as to whether or not in this instance Saunders, in his capacity as agent, also occupied the further capacity of servant of the insurance company in the matter of operation of the automobile. It is settled that 'the test of one's liability for the act or omission of his alleged servant is his right and power to direct and con-

trol his imputed agent in the performance of the causal act or omission at the very instant of the act or neglect.' Putting the matter in a different way, it may be said that a master is liable for acts of his agent under the doctrine of respondeat superior only where the relationship of master and servant exists at the time and in respect to the very thing causing the injury and from which it arises. Trachtenberg v. Castillo (Tex.Civ.App.) 257 S.W. 657; Leachman v. Belknap Hardware & Mfg. Co., 260 Ky. 123, 84 S.W.(2d) 46; Standard Oil Company v. Parkinson (C.C.A.) 152 F. 681, and authorities cited in those cases. The Supreme Court of Tennessee has in several cases reiterated the language of Judge Lurton as follows: 'In every case, the decisive question is, had the defendant the right to control in the given particular, the conduct of the person doing the wrong.' See Income Life Insurance Co. v. Mitchell, 168 Tenn. 471, 79 S.W. (2d) 572, 574. * * *

"We cite only a portion of the leading similar cases which support the conclusion we have reached: National Cash Register Co. v. Rider (Tex.Com.App.) 24 S.W.(2d) 28; Leachman v. Belknap Hardware & Mfg. Co., 260 Ky. 123, 84 S.W.(2d) 46; Income Life Insurance Company v. Mitchell, 168 Tenn. 471, 79 S.W.(2d) 572; American Savings Life Insurance Company v. Riplinger, 249 Ky. 8, 60 S.W.(2d) 115; Manus v. Kansas City Distributing Corporation, 228 Mo.App. 905, 74 S.W. (2d) 506, 510; Stockwell v. Morris, 46 Wyo. 1, 22 P.(2d) 189, 191; Mitchell v. Maytag-Pacific-Intermountain Company [184 Wash. 342], 51 P.(2d) 393; Wesolowski v. John Hancock Mutual Life Insurance Company, 308 Pa. 117, 162 A. 166, 167, 87 A.L.R. 783; McCarthy v. Souther, 83 N.H. 29, 137 A. 445; Ignatowitch v. McLaughlin (N.D.) 262 N.W. 352, 354; Kassela v. Hoseth, 217 Wis. 115, 258 N.W. 340; Harrington v. H. D. Lee Mercantile Co., 97 Mont. 40, 33 P.(2d) 553; Nettleship v. Shipman, 161 Wash. 292, 296 P. 1056; Dohner v. Winfield Wholesale Grocery Company, 116 Kan. 237, 226 P. 767; McCraner v. Nunn, 129 Kan. 802, 284 P. 603; Barton v. Studebaker Corp., 46 Cal.App. 707, 189 P. 1025; Pyyny v. Loose-Wiles Biscuit Company, 253 Mass. 574, 149 N.E. 541; James v. Tobin-Sutton Company, 182 Wis. 36, 195 N.W. 848, 29 A.L.R. 457; Khoury v. Edison Electric Illuminating Company, 265 Mass. 236, 164 N.E. 77, 60 A.L.R. 1159; Gall v. Detroit Journal Company, 191 Mich. 405, 158 N. W. 36, 19 A.L.R. 1164; Aldrich v. Tyler Grocery Company, 206 Ala. 138, 89 So. 289, 17 A.L.R. 617; Neece v. Lee, 129 Neb. 561, 262 N.W. 1.

"It would be superfluous to quote from these decisions, except to emphasize the controlling element of liability in such cases as these. This element consists in the fact that the agent or solicitor must be under the control of the principal as regards his physical movements in the performance of the contract in order to create liability upon the part of the principal for the agent's tortious acts. * * *

"In the case of Wesolowski v. John Hancock Mutual Life Insurance Company, supra, the Supreme Court of Pennsylvania used this language:

" 'In the case before us the defendant had no control over Adams' car. It was in no position to require him to use it, for the use of his car was no part of his contract of service. It could not direct him when, where, or how to drive his car. It had no more control of Adams' car in which he transported himself than it had of the shoes he used in walking from patron to patron. The employer was indifferent as to whether Adams walked, rode a bicycle, or operated a motorcar to reach the people with whom he transacted business. If Adams had chosen to walk from person to person with whom he had his employer's business to transact and in walking he had negligently knocked over and injured another pedestrian, it could not reasonably be contended that his employer should respond in damages for Adams' negligent pedestrianism. So to hold would be to construe the phrase "respondeat superior" beyond its fundamental meaning and to carry its principle to absurd lengths and to consequences forbidden by every sound consideration of public policy.'

"In the case of Manus v. Kansas City Distributing Corporation, supra, the court quoted with approval from the case of McCarthy v. Souther, supra, a statement which has been quoted in several cases as follows:

" 'The decisive inquiry is whether the employer had any control over Souther in the management and operation of the latter's automobile. If the evidence leaves it doubtful whether control and direction in respect to the details of the work is reserved, the question is to be resolved as

one of fact. * * * Upon this issue there is no evidence whatever to show any such control. Souther owned the car and was entitled to its exclusive possession. So far as appears, his contract of employment gave his employer no right of direction for any use of the car by others, and he was to maintain and run it as his personal affair. The allowance made for expenses implied no right and no liability on the employer's part in respect to its maintenance and operation. No authority for the employer to direct Souther how to run the car is to be inferred from the relations between them, and the employer had no more charge or control over Souther's means and manner of transportation than if the travel had been by train. While the employer might assign the routes and times for Souther's trips with the car, it might not direct how the trips should be made, or how the car should be managed. The employer, having no right, if present, to direct Souther in the way he ran and used the car, is not liable for the way it was run and used. How the car was run was its affair only in the sense of its interest in the results obtained from proper operation, and that interest was no evidence of a right to run it, or to say in what way it should be run as to the details of operation. A directed verdict for the employer should have been ordered.'

"The opinion in the case of Stockwell v. Morris, supra, by the Supreme Court of Wyoming, appears to us to be unanswerable. It reviews practically all American cases falling in this class. It demonstrates clearly how the doctrine here announced as applicable to salesmen and insurance agents has developed as a departure from the rigid rule applicable in cases of master and servant. * * *

"After a review of numerous other cases, the court reached the conclusion that 'the right of control of the physical movements—the automobile—is the decisive inquiry.' The court then concludes that in the absence of an express reservation in the contract of control in that regard, or a necessary implication of such right from all the provisions of the contract and the circumstances, there could be no liability on the part of the principal.

"As pointed out in the statement of the case, the contract in this instance gave plaintiff in error no control over the manner and means adopted by Saunders in the performance of his work, and left him free to choose any mode of travel which might seem to him best. He owned no automobile, and was furnished none by the company, and only at times used his wife's car for transportation. Most frequently he went on foot or by other means. Tested by the principles above announced, we are inescapably driven to the conclusion that there was no control over him by plaintiff in error in the matter of physical movements in the accomplishment of his work, and consequently plaintiff in error was not liable for his negligent acts in operation of the automobile.

"Counsel for defendants in error rely strongly upon the recent case of Texas Power & Light Company v. Denson, 125 Tex. 383, 81 S.W.(2d) 36, in which the opinion was adopted by the Supreme Court. That case is not authority here. It will be noted that in the opinion Deaton is referred to as an 'employee' and 'Servant' of the Texas Power & Light Company several times. An examination of the record discloses that this was his true relation to the company. He was employed as a salesman and demonstrator, worked under the complete direction and control of the company's manager, and was paid a salary. The question of agency was not in the case. The decision turned upon the question of whether or not the company was liable for the negligence of Deaton, although acting as an employee and in the course of his regular employment, if he used his own automobile for that purpose. The facts of the present case obviously create an entirely different situation.

"The judgments of the trial court and the Court of Civil Appeals are reversed and judgment is here rendered in favor of the plaintiff in error.

"Opinion adopted by the Supreme Court."

■ This case must not be confused with those cases in which the principal selects and furnishes the agent with a particular vehicle, and requires him to use it in going from place to place on the principal's errands, nor even with those cases in which the principal requires the agent to use his own vehicle in doing the principal's work, although we are not sure that the distinction is uniformly observed and given effect by the courts. But, whatever its value may be in some cases, it is not applicable here, in the absence of the distinguishing facts.

Nor must this case be confused with those cases in which the offending agent, or (in deference to the very reasonable distinction drawn in the Denke Case) servant, is engaged in loading, transporting, or delivering the products or goods of the master in vehicles furnished or required by the master, or by the inherent character of the product or goods.

The fact that in those cases the injury is inflicted through the very instrumentality furnished or required by the master, or by the nature of his products or goods, takes that class of cases far away from such as that presented here, and in so removing them, takes them very clearly and definitely away from the doctrine of respondeat superior.

We are of the opinion that the judgment here rests in neither reason, justice, or law, and should not stand.

Accordingly, the judgment is reversed, and judgment here rendered that appellees take nothing, and pay all costs of the litigation.