No. 36,389

ALBERT J. BAILEY, *Appellant*, v. THE MOSBY HOTEL COMPANY, *Appellee*.

(160 P. 2d 701)

Opinion filed July 7, 1945.

*A. D. Weiskirch,* of Wichita, argued the cause, and *George B. Collins* and *C. L. Williams,* both of Wichita, were on the briefs for the appellant.

*O. B. Eidson,* of Topeka, argued the cause, and *T. M. Lillard, Philip H. Lewis* and *James W. Porter,* all of Topeka, were on the briefs for the appellee.

The opinion of the court was delivered by

HOCH, J.: This was a common law action to recover damages for personal injuries resulting from an accident. A motion by defend-

ant for judgment on the pleadings was sustained and the plaintiff appeals.

Appellee, The Mosby Hotel Company, operates the Jayhawk Hotel in Topeka, Kan. Appellant, Albert J. Bailey, alleging that he was seriously injured as the result of defendant's negligent operation of an elevator in the hotel, sought recovery in the amount of $39,163.80. It is conceded by appellant that if his injuries were compensable under the Kansas workmen's compensation law (G. S. 1935, ch. 44, art. 5) such relief is exclusive and the common law action for damages, founded on negligence, will not lie. (G. S. 1935, 44-501; *Bell v. Hall Lithographing Co.*, 154 Kan. 660, 666, 121 P. 2d 281; *Employers' Liability Assurance Corp. v. Matlock*, 151 Kan. 293, 298, 98 P. 2d 456.) Accordingly, the principal issue presented is whether the compensation law is applicable.

The pleadings, tested by defendant's motion for judgment, consisted of an amended petition, an answer and a reply. Being tantamount to a demurrer, and treated as such, the motion concedes all facts well pleaded in the petition and reply. Accordingly, we shall examine such facts, together with pertinent averments of the answer not denied in the reply. If any allegations of material fact in the reply are inconsistent with and constitute a departure from the cause of action asserted in the petition they will be disregarded. (G. S. 1935, 60-717; *Kolich v. Travelers Ins. Co.*, 154 Kan. 458, 462, 119 P. 2d 498; *Johnson v. Bank*, 59 Kan. 250, 252, 52 Pac. 860.)

It is not necessary to set out the pleadings in full, nor any of the formal allegations that are not denied. The pertinent allegations of fact may be summarized as follows:

In the spring of 1944 the hotel management made an oral contract with the Office Supply & Equipment Company of Topeka—hereinafter called the Supply company—to clean and wax the floor of the coffee shop, an eating place operated on the lower floor of the building as part of the hotel business. In order to inconvenience guests as little as possible the Supply company was directed to do the work after 8:00 p. m. and to begin in the east end of the room. On May 5, 1944, the plaintiff, Albert Bailey, a workman employed and paid by the Supply company, arrived at the hotel with his tools, supplies, and working equipment for the purpose of doing the work, in pursuance of the contract. He entered the hotel at the alley entrance and reached the freight elevator which he expected to use to descend to the coffee shop, which is one floor below and to the west. He

called down to an employee below to send up the elevator. The employee below attempted to start the elevator and called up that he was unable to start it, and told the plaintiff to pull the starter rope. While reaching over the top of the elevator gate in order to get hold of the rope the elevator was set in motion in some manner. The plaintiff's arm was caught in the gate and he was carried upward for some distance with resulting serious injuries to his head and other parts of his body. The defendant company had elected to come under the workmen's compensation act in November, 1929, and was under and subject to the terms of the act at the time of the accident.

The trial court at first overruled defendant's motion for judgment, but upon reconsideration, after briefs had been submitted by both parties, sustained it and in doing so filed a memorandum opinion from which we take the following excerpts:

"The facts alleged in the pleadings show that if the plaintiff is relegated to a claim under the Workmen's Compensation Act his claim must be made under Sec. 44-503, G. S. Kansas 1935, which is the subcontracting section. Applying Sec. 44-503 to the facts in this case as alleged and admitted in the pleadings, the first part of subsection (a) of the section would read as follows: 'Where the Mosby Hotel Company undertakes the cleaning or waxing of its coffee shop floors, which is a part of its trade or business, and contracts with the Office Supply & Equipment Company for the cleaning and waxing of said floors, the Mosby Hotel Company shall be liable to pay to Bailey, employed in the cleaning and waxing of the floors, any compensation which the Mosby Hotel Company would have been required to pay Bailey if Bailey had been immediately employed by the Mosby Hotel Company . . .' The facts alleged and admitted in the pleadings in this case indicate to me that Bailey is in no different situation with respect to the accident involved in this case than he would have been had he been a direct employee of the Mosby Hotel Company, and there is no doubt in my mind at all but that if Bailey had been a direct employee of the Hotel Company and ordered to do the job involved in this case he could not have recovered in a common law action but would have been compelled to make his claim under the Workmen's Compensation Act."

Summarized, appellant's contentions are that he had no compensable claim against the appellee under the workmen's compensation act for the reasons that: *First,* he was not an employee of appellee and was not subject to its control; *second,* he had not reached the place of employment or commenced the work he was to do; *third,* cleaning and waxing floors was no part of the business of operating the hotel; *fourth,* the accident was not one "arising out of and in the course of employment."

First, as to the first contention: Section 44-503 of the act provides, in substance that where any person contracts with any other person to do work which is part of the principal's trade or business he shall be liable to pay compensation to any injured workman employed in pursuance of the contract to the same extent as though such workman had been immediately employed by him. The purpose of the section is to give employees of such a contractor a remedy against the principal. (*Purkable v. Greenland Oil Co.*, 122 Kan. 720, 722, 253 Pac. 219.) Otherwise an employer subject to the workmen's compensation act could escape liability for injuries received by persons in carrying on his trade or business by the simple expedient of hiring an independent contractor to do the work and letting him employ and direct the workmen. In the *Gleenland Oil Co.* case, supra, a company engaged in the business of developing mineral leases and producing oil let a contract to one Hedges, a derrick builder, to take a derrick from one lease and build one on another lease. Hedges "furnished his own tools, employed his own workmen, and *did the work according to his own plan and method,* for a standard price, *free from control reserved or exercised*" (italics supplied) by the oil company. Purkable, an employee of Hedges, fell from the derrick before its construction was completed and was killed. The oil company was held liable under section 44-503, although the injured workman, employed by the contractor, was in no way under its control.

Although mindful of the decision in the Greenland case the appellant calls attention to *Lehman v. Grace Oil Co.*, 151 Kan. 145, 98 P. 2d 430, and to *Bittle v. Shell Petroleum Corp.*, 147 Kan. 227, 75 P. 2d 829, and urges that they support his contentions here. We do not so interpret those cases. In the Lehman case an oil company desired to place a dwelling house for a pumper upon one of its leases. It had no men skilled in moving houses and no equipment for such work, and hired a house-mover to move a house from a distance. While the house was being moved and before it reached the lease a workman employed by the house-mover was injured and sought compensation from the oil company. His claim was denied on the ground that moving houses to be occupied as homes by workmen was not a necessary incident of the company's oil operations, and that the workman's employer was an independent contractor engaged in a specialized work. In the Bittle case an oil company operating a lease from which both gas and oil were being produced em-

ployed a boiler and welding concern to weld a boiler which was installed on the lease. When an employee of the boiler concern—a welder by trade—arrived to do the work an oil company employee accompanied him in order to show the way to reach the place over a private roadway. While they were on their way their truck broke a gas pipe laid across the roadway, the gas ignited, and the welder was severely burned. The welder brought action against the oil company under the compensation act, invoking the provisions of section 44-503. Compensation was denied. In the opinion the fact was stressed—perhaps unduly—that the oil company had no control over the workman. Standing alone such statements give support to appellant's contention here, although they are clearly at variance with what was said in the Greenland case, *supra*. But the decision in the Bittle case is not to be appraised solely by the statements which it contains with reference to control over the workman. On more fundamental grounds it is clearly distinguishable from the Greenland case and others of like import. Welding boilers was no part of the work of the oil company. It was a specialized trade having no more to do with the production of oil than was the original manufacture of the boiler. It was not analogous to the erection of a derrick—as in the Greenland case—which is a usual, a normal part of an oil-producing company's business. The fact that the injured welder was not under the control of the oil company was only incidental to the primary fact that in having a boiler welded by a company engaged in that specialized business it was not undertaking "to execute any work which is a part of his trade or business." (G. S. 1935, 44-503.)

Appellant also cites *McIlvain v. Oil and Gas Co.*, 110 Kan. 266, 203 Pac. 701, in which it was held that an oil and gas company was not liable under the compensation act to an injured workman hired by a contractor to haul some casing to a machine shop for repairs. We do not regard the case as persuasive. Nothing in the opinion indicates that section 44-503 was considered, and the matter is disposed of by the simple statement that the injured workman was an employee of an independent contractor and not of the oil company and that the case was controlled by the decision in *Farmer v. Purcell*, 109 Kan. 612, 201 Pac. 66—which appellant also cites here. But the Purcell case is no authority whatever as to the construction or effect of section 44-503. Although holding that a sawmill owner was not liable for injuries suffered by a workman employed by a contractor

to help remove a pile of sawdust which had accumulated over a long period, the court said:

"We are not called upon to determine whether the defendant might be liable notwithstanding the plaintiff was the employee of an independent contractor, under the portion of the compensation act which reads: [Here follows the section of the statute which is now G. S. 1935, 44-503.] The instruction of the trial court that no recovery could be had if Holter was an independent contractor has not been challenged, but has been accepted as the law of the case. The matter is mentioned only in order that the decision may not be regarded as placing an interpretation upon the statutory provisions just quoted." (p. 616.)

Appellant also cites *Martin v. Craig,* 148 Kan. 882, 84 P. 2d 853, and *Bell v. Hall Lithographing Co.,* 154 Kan. 660, 121 P. 2d 281. We do not find these cases helpful on the point. In the Craig case the respondent, engaged in the manufacturing business in Kansas City, owned several residence properties in Wichita. He called his brother and asked him to get some one to put some shingles on two houses. A workman was injured. The issue turned on the question of whether the respondent was engaged in the business of repairing buildings, in a hazardous trade or business within the provisions of section 44-505, G. S. 1935. It was held that he was not engaged in the building business and therefore was not under the act. In the Bell case, *supra,* the claimant sought to recover damages under the factory act. (G. S. 1935, 44-105.) It would unduly extend this opinion to recite the involved facts of the case. Suffice it to say that it was held that the claimant was a special employee of the respondent doing work for it and at its request; that therefore he had a claim under the compensation act; that such relief was exclusive, and that no action would lie under the factory act.

Appellant calls to our attention many cases from other jurisdictions, but we shall not analyze them here. Many divergent statutory provisions are involved. We conclude, upon this point, that under the facts of this case section 44-503 makes the appellee liable to the appellant to the same extent as though he had been "immediately employed" by it.

Appellant next contends that he had not reached the place of employment and that therefore compensation is made unavailable by section 44-508, G. S. 1935, which provides that in the absence of negligence on the part of the employer injuries occurring while the workman "is on his way to assume the duties of his employment or after leaving such duties" are not to be construed as "arising out of

and in the course of employment." We cannot agree. Appellant pleaded that the coffee shop was "a part of the premises in and on which defendant operated the Jayhawk Hotel"; that he had entered the hotel with his tools and other equipment and had reached the elevator and was attempting to use it when the accident occurred. If the appellant were here seeking to recover under the compensation act certainly it would be a strict construction of the act to hold that he had not reached the premises and the place where he was to work. Appellant does not press the point, but cites the cases of *Harrison v. Lozier-Broderick & Gordon*, 158 Kan. 129, 145 P. 2d 147; *Cook v. Dobson Sheet Metal Works*, 157 Kan. 576, 142 P. 2d 709. These cases do not support the contention. In the Harrison case the workman's place of employment "was in the vicinity of time shack No. 11." The injury was suffered while the claimant was walking down the highway on his way to time shack No. 11 and "had not yet reached his place of employment." In the Cook case the workman relied solely upon the proposition that the evidence showed that he was on the job when the injury occurred. The Commissioner's finding of fact to the contrary was adopted by the trial court. We refused to reverse, saying that "there was no showing that the accident occurred on any premises under the control of the respondent," etc. Our many cases on the subject need not be reviewed. We know of none inconsistent with the conclusion here reached.

The third contention, strongly urged by appellant, is that cleaning and waxing floors was no part of appellee's regular business as operator of the hotel. It must first be noted that although appellant argues that the evidence would disclose that the work was to be done "by a special process" the pleadings contain no such allegation. Plaintiff simply alleged in his petition that the contract was to "clean and wax the floor." In the reply it was alleged that the work was to be done "according to the plaintiff's and his employer's own methods." If the latter be regarded as enlarging the allegations of the petition in a manner to state a new cause of action then it must be disregarded under the rule of law heretofore stated. However, we need not consider it so significant. There is no averment that the employer's "own method" was specialized, out of the ordinary, or one requiring unusual equipment.

We do not think it necessary to labor the point. It is common knowledge that cleaning and waxing the floor of an eating place is common practice. It could almost be said to be a routine matter in

any well-conducted eating place. According to the petition the eating place in question is the coffee shop in a ten-story hotel.

Appellant cites numerous cases from other jurisdictions. Some of them tend to support his position but we do not find many of them persuasive here. We note a few of them:

In *Johnson Co. v. Industrial Com.*, 306 Ill. 197, 137 N. E. 789, it was held that cleaning the smokestack on a building occupied by a company engaged in the cooperage business was not a part of that business. In *King v. Palmer,* 129 Conn. 636, 30 A. 2d 549, it was held that putting in a steam-pressure system in an engine house by an independent contractor was not part of the business of the railroad company employing him. Many of the other cases are of similar import—involving the installation or repairing of special machinery or equipment by independent contractors engaged in specialized work of that sort. The only case cited which seems reasonably analogous to the one before us is a Colorado case (*American Co. v. Franzen,* 81 Colo. 161, 254 Pac. 160), where it was held that cleaning the windows of a factory at certain intervals under contract by an independent contractor was not a part of the factory owner's business of manufacturing and selling heating systems. Other foreign cases need not be reviewed. In any event such cases, if in point, are out of line with our decisions, and particularly our later decisions.

In *Schroeder v. American Natl. Bank,* 154 Kan. 721, 121 P. 2d 186, we held that the remodeling and building of a bank teller's cage and certain grill work was incidental to the operation of the banking business. The bank was held liable under the act even though the cabinet maker was injured while building the equipment in his own shop.

In *Johnson v. Voss,* 152 Kan. 586, 106 P. 2d 648, the respondent was operator of a grain elevator. It was held that the construction of an addition to the elevator was incidental to the operation of respondent's grain-elevator business. To like effect was the holding in *Raynes v. Riss & Co.,* 152 Kan. 383, 103 P. 2d 818, where a respondent operating a fleet of trucks as a common carrier undertook to remodel a building for use in its business. Injury to a workman was held to be compensable. (See, also, *Williams v. Cities Service Gas Co.,* 139 Kan. 166, 30 P. 2d 97; *Purkable v. Greenland Oil Co.,* supra.)

Among many cases from other jurisdictions cited by appellee is

the case of *Fox v. Fafnir Bearing Co.*, 107 Conn. 189, 139 Atl. 778, 58 A. L. R. 861, 864, which dealt with a contract to clean factory windows and in which a different conclusion was reached from that in *American Co. v. Franzen,* supra. In that case it was said:

"The plaintiff's work of window washing was work which had to do with the maintenance of the factory building in good condition for the manufacturing processes there conducted, and which could fairly be said to be essential for that purpose—work similar in character to that of scrubbing the floors, cleaning the offices, and ordinary janitor work. Such work is customarily done by regular employees in the daily routine of their duties in the factory. It is clearly distinguishable from 'work done in connection with the repair or alteration of the factory buildings. It is a part of the work of keeping the employer's factory in running condition, and therefore a part of its trade or business though not directly connected with any manufacturing process." (p. 195.)

We pass to appellant's fourth and last contention that the injury did not "arise out of" and was not "in the course" of his employment. Clearly it was "in the course of" the employment. We have frequently said that those words point to the time, place, and circumstances under which an accident takes place, that they simply mean "while the employment was in progress." (*Floro v. Ticehurst,* 147 Kan. 426, 430, 431, 76 P. 2d 773 and cases cited.) Appellant had arrived upon appellee's premises where he was to do the work and was attempting to use the elevator. Certainly if he had been down in the coffee shop and had been attempting to use the elevator to go up to the floor above to get some of his tools no one would say he was not "in the course of the employment." To hold that a workman employed to do work about the hotel would not be "in the course" of employment during the time he was using the elevator would be a very harsh rule, subversive of the plain intent of the workman's compensation law.

Did the accident "arise out of" the employment? Here the answer is not quite so obvious. We have said many times that the two phrases "in the course of" and "arise out of" are separate, conjunctive, that both conditions must exist, and that the latter phrase implies a causal connection between the accident and the employment. (*Rush v. Empire Oil & Refining Co.,* 140 Kan. 198, 34 P. 2d 542.) We adhere to those pronouncements. But the word "causal" certainly does not mean that the accident must have resulted directly and immediately from performance of the work for which the workman was employed. None of our cases has so restricted its mean-

ing. Such a narrowed interpretation would mean that whenever a workman was not directly engaged in the actual work to be done he would be without protection under the law. If he laid down his tools and went across the room for a drink of water he would do so at his own risk. If a workman is "in the course" of his employment and suffers an injury either while actually doing the work or while performing some act which is normally and commonly incident thereto, such injury ordinarily "arises out of" his employment. Any other construction of the term would subvert the act and lead to absurd results. Of course if a workman departs from the normal activities incident to the work; if he suffers an injury from some cause in no way connected with it, the injury cannot be said to "arise out of" his employment. From our many cases illustrating this distinction we cite the following two:

A porter at a country club drove to his home to get some laundry which had been done for the club. He fell in the yard at his home mortally wounded—it was claimed—by the discharge of a pistol which he was carrying in his pocket. Held, the accident did not "arise out of" his employment. Carrying a pistol was not a normal incident of the employment. (*Hudson v. Salina Country Club*, 148 Kan. 697, 84 P. 2d 854.) At the other extreme of cases on the point is *Corpora v. Kansas City Public Service Co.*, 129 Kan. 690, 284 Pac. 818. A workman arrived for work a few minutes early, checked in, went to a dressing room and sustained a fall—resulting in his death—while putting on his overalls. Held, that the accident was incident to his employment. Certainly the instant case is much stronger, since the elevator was part of the employer's equipment, used by hotel workmen but not under their control. This can hardly be said concerning a workman's act in putting on his overalls! (See, also, *McDonnell v. Swift & Co.*, 124 Kan. 327, 259 Pac. 695; *Thomas v. Manufacturing Co.*, 104 Kan. 432, 179 Pac. 372.) In the instant case the appellee was not engaged in some personal act unrelated to his employment; he had not "departed" from the work for which he was employed; he was not injured by the intervention of some act or event with which the employer was not connected. The use of the freight elevator was incidental, naturally and normally, to the work for which he was employed. Furthermore, appellant pleaded the contract between appellee and his immediate employer, the Supply company, and pleaded that *"pursuant to said contract* plaintiff met with and *sustained the injuries* described." (Italics supplied.) We

conclude that the accident arose out of and in the course of his employment.

The rule is firmly established that the Workmen's Compensation Act is to be liberally construed to effectuate its purposes. (*Murphy v. I. C. U. Const. Co.*, 158 Kan. 541, 548, 148 P. 2d 771; *Chamberlain v. Bowersock Mills & Power Co.*, 150 Kan. 934, 944, 96 P. 2d 684, and cases cited.) If, under the same circumstances upon which he here relies in a common law action the appellant had sought relief for some injury under the workmen's compensation act, he would have been entitled to and would have received the benefit of such liberal construction. It would be ironical to apply a different rule simply because in this instance he chooses another course. It would also be unfair to other workmen whose interests may well be affected in the future.

The judgment is affirmed.