### No. 27,117.

MARGARET ANN PURKABLE et al., *Appellees*, v. THE GREENLAND OIL COMPANY and J. H. REVELY, *Appellants*.

#### SYLLABUS BY THE COURT.

WORKMEN'S COMPENSATION ACT—*Relation of Parties—Workman Under Subcontractor Engaged in Principal's Business—Accident Occurring on Premises —Liability to Dependents.* An oil company engaged in developing mineral resources of leased land and producing oil therefrom, let to an independent contractor a contract to erect a derrick on the land, as an incident to the drilling of an oil well by the company. While the derrick was under construction one of the contractor's workmen fell from it and received injuries which resulted in death. The workman's dependents sued the company for compensation. *Held,* the work of building the derrick was part of the company's business, within the meaning of the subcontracting section of the workmen's compensation act (R. S. 44-503); the accident occurred on premises on which the company had undertaken to execute work, within the meaning of subdivision (*d*) of the section; and the company was liable to the dependents for compensation, under subdivision (*a*) of the section.

Appeal from Greenwood district court, division No. 1; ALLISON T. AYRES, judge. Opinion filed February 12, 1927. Affirmed.

Workmen's Compensation Acts, C. J. p. 50 n. 60; L. R. A. 1916, 118, 247; L. R. A. 1917D, 148; L. R. A. 1918F, 206; 28 R. C. L. 762.

Purkable v. Greenland Oil Co.

*C. H. Brooks, Willard Brooks, Howard T. Fleeson,* all of Wichita, and *Homer V. Gooing,* of Eureka, for the appellants.

*James E. Smith, Thomas C. Forbes* and *Fred S. Jackson,* all of Topeka, for the appellees.

The opinion of the court was delivered by

Burch, J.: The action was one by dependents for compensation for death of a workman. Plaintiffs recovered, and defendants appeal.

The company was engaged in the business of developing mineral resources of leased land and producing mineral therefrom. In the prosecution of this business, drilling rigs were erected. On occasion, a derrick would be torn down, and salvaged material would be used in another place, necessary new material being furnished by the company. The work of tearing down and rebuilding derricks was let to a derrick builder, F. J. Hedges, who furnished his own tools, employed his own workmen, and did the work according to his own plan and method, for a standard price, free from control reserved or exercised by the company. Hedges had been building rigs for the company for about a year and a half previous to the accident. Defendant purchased and owned a lease referred to by Hedges as the Shambaugh lease. The vice president of the company, who had charge of development and production and was the person to see about rigs, directed Hedges to take the derrick from a lease on which the company had been operating, and build a seventy-four-foot derrick on the Shambaugh lease. The Shambaugh was a producing lease, on which there were three wells, and the work of drilling well No. 4, to which erection of the derrick was an incident, was being conducted by the company. Hedges employed Harry V. Purkable as a workman. When the new derrick was partially completed, Purkable fell from it and received injuries which resulted in death.

Liability of the company to pay compensation is predicated on the subcontracting section of the workmen's compensation act. The section provides that when any person, called principal, undertakes to execute any work "which is a part of his trade or business," and contracts with another person, called contractor, for execution of the whole or any part of the work, the principal shall be liable to pay to a workman employed in execution of the work any compensation for which the principal would have been liable if the workman

had been employed directly by the principal. Subdivision (*d*) of the section reads as follows:

"This section shall not apply to any case where the accident occurred elsewhere than on or in, or about the premises on which the principal has undertaken to execute work or which are otherwise under his control or management, or on, in, or about the execution of such work under his control or management." (R. S. 44-503.)

The company contends Hedges was an independent contractor, and because Purkable was employed by Hedges, the company is not liable. The statute was enacted for the very purpose of giving employees of the contractor remedy against the principal, and the court has so held. (*Spencer v. Marshall*, 107 Kan. 264, 191 Pac. 468.)

The company cites three cases which it asserts support its contention. None of them does so. In the case of *Maughlelle v. Mining Co.*, 99 Kan. 412, 161 Pac. 907, a coal-mine owner leased his mine, and the lessee employed a workman, who was injured. The mine owner was not undertaking to execute work of mining coal, any more than a landowner undertakes to farm land which he leases to a tenant for a term of years, and the lessor had no management or control over the lessee's operation of the mine. In the case of *Farmer v. Purcell*, 109 Kan. 612, 201 Pac. 66, the district court instructed the jury that if the employer of the workman was an independent contractor, the workman could not recover from the principal. No complaint was made of the instruction, which became the law of the case, the question now under consideration was not before this court, and was not determined. In the case of *McIllvain v. Oil and Gas Co.*, 110 Kan. 266, 203 Pac. 701, the Prairie Oil and Gas Company employed Earl Blue to haul casing from leased premises to a machine shop twenty miles away. Blue employed McIllvain to help load and unload casing. The court held McIllvain was not the company's employee, and cited the Farmer case for its discussion of the difficult question—employee, or independent contractor? With respect to Blue, the court held his work belonged to no class of work, and was not performed on, in or about any locality covered by the workmen's compensation act. By citing the Farmer case, which for the reason stated did not involve the subcontracting provision of the statute, the court had no intention to deny the decision in the Spencer case and nullify the statute. Perhaps the opinion should have been extended to show the precise manner in which the controversy was presented to this court. The briefs were

devoted to discussion of nature and locality of employment. Although the company was under the compensation act, and hauling pipe was an incident to its business, hauling pipe had nothing to do with that part of its business which brought the company within the act. This was indicated in the first paragraph of the syllabus. In the absence of any contention that the company would be liable if the workman were not its employee, it was sufficient to say he was not its employee. If it had been determined that the workman was an employee, the law relating to nature and locality of employment would have been applied.

The company criticizes the findings of the court with respect to nature of the company's business. The criticisms need not be discussed. It is not disputed that, as the court found, the company was engaged in the business of developing land covered by oil and gas leases, and producing oil and gas therefrom. It was admitted at the trial that the company owned the lease on which the derrick stood which Hedges was erecting. It is not disputed that, as the court found, the company was engaged in drilling oil and gas wells on the lease, and was producing oil therefrom. It was admitted at the trial that the work of drilling a well to which building of the derrick was an incident, was being conducted by the company. Aside from the fact that the subject is one of common knowledge, it was a fair inference from the testimony and the admissions that, as the court found, an oil-well derrick is a part of the necessary equipment for drilling an oil well, and construction of such a derrick is a part of the business or work of drilling an oil well. The result is, the business of the company was operating for and producing oil, the work of building the derrick was part of its business, and the accident occurred on premises on which the company had undertaken to execute work under its management and control and a part of its business.

The company denies the building of derricks was part of its business, contends the most that can be said of such work is that it was merely ancillary or incidental to the company's business, and concludes the subcontracting provision of the statute does not apply. In support of this position, the brief for the company quotes the British workmen's compensation act of 6 Edw. VII, c. 58, § 4, which is identical in part with and otherwise similar to R. S. 44-503, and then says: "Construing this particular section of the act, a number

of cases have been decided by the English courts." A review of several English decisions follows, one of which is typical. A railway company let a contract to a firm to build stations for the company. A painter employed by the contractor was injured while painting a station. It was held the painter was not entitled to compensation from the railway company. The court said the primary business of a railway company is to carry passengers and goods, the erection of stations is not a part of that business, and it would be difficult to give a better illustration of what constitutes merely ancillary or incidental work, as distinguished from the actual business carried on, than the case afforded. (*Pearce v. London and Southwestern Railway Co.* [1900], 2 Q. B. 100.)

The obstacle to recognition of this authority consists in the fact that the court was not, as the brief states, construing the act of 6 Edw. VII. The year 6 Edw. VII was the year 1906. The compensation act of 6 Edw. VII was passed in that year, and section 4 served as a model for section 4 of our statute of 1911, now R. S. 44-503. The decisions cited, the last of which was rendered in 1902, dealt with the act of 60 and 61 Vict. c. 37 passed in 1897. Section 4 of that act was similar to section 4 of the act of 1906, with this exception: The earlier section contained the following provision:

"This section shall not apply to any contract with any person for the execution by or under such contractor of any work which is merely ancillary or incidental to, and is no part of, or process in, the trade or business carried on by such undertakers respectively."

The provision was omitted from the British acts of 1906, 1923 and 1925, and has not been recognized in the compensation legislation of this state. Inclusion of the quoted provision in section 4 of the act of 1897, and repeal of the provision in 1906, indicate that, without the provision, a contractor's workman injured in execution of work ancillary or incidental to the principal's trade or business, is entitled to compensation from the principal. In this instance, the work of building the derrick was part of the company's business as a necessary incident to prosecution of its primary business of producing oil.

A contention relating to insufficiency of offer to arbitrate is without merit.

The judgment of the district court is affirmed.