No. 33,757

E. S. BITTLE, *Appellee,* v. SHELL PETROLEUM CORPORATION, *Appellant,* and THE KANSAS POWER & LIGHT COMPANY (*Defendant*).

(75 P. 2d 829)

Opinion filed January 29, 1938.

*Paul J. Wall, Carl I. Winsor, John E. Boyer* and *George J. Hondros,* all of Wichita, for the appellant.

*James L. Galle, Robert O. Mason,* both of McPherson, *William J. Wertz, Vincent F. Hiebsch* and *Forest V. McCalley,* all of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: Plaintiff brought this common-law action for damages for injuries sustained through the alleged negligence of defendants. The Shell Petroleum Corporation, defendant, interposed a demurrer to plaintiff's petition on the assumption that the facts had been so comprehensively stated therein as to make it clear that plaintiff's right of redress was restricted to the provisions of the workmen's compensation act. The trial court held otherwise and overruled the demurrer. Hence this appeal.

From the allegations of the petition, which extends to ten printed pages, the pleaded facts may be summarized thus:

The Shell Petroleum Corporation holds an oil and gas lease on a certain tract of land near Galva, in McPherson county, known as the Finkle lease. On this lease are oil and gas wells, pumps, tanks, engines, boiler house, boilers, slush ponds, and other paraphernalia incidental to the production of oil and gas.

The codefendant, the Kansas Power & Light Company, is engaged in transporting natural gas from McPherson county production areas to market centers elsewhere. It has gas lines, separators, reducers, distributors, meters, cutting devices, and other paraphernalia used in the accumulation and transportation of natural gas.

On the Finkle lease the Shell Petroleum Corporation had informally laid out and used a sort of private roadway which ran from some adjacent public road to the center of its industrial activities. This private roadway enters the premises from the north and runs southward for some unstated distance to a point where there is a meter house on the east side of the roadway and a slush pond on the west. At this point the private roadway is barely wide enough for a motor vehicle to pass between the meter house and the slush pond. After negotiating this narrow passage, the roadway turns to the west for some unstated distance to the point where there was a boiler

belonging to the Shell Petroleum Corporation which needed to have some of its flues welded.

Near the slush pond and the meter house one of the gas pipe lines of the Kansas Power & Light Company had been laid across the private roadway without being buried. In the meter house a fire was burning—for what purpose does not appear.

The plaintiff in this action is a welder by trade, and at the time of present concern he was employed by one D. R. Churchill, a sole trader doing business in McPherson under the name of Churchill Boiler and Welding Works, which apparently indicated the nature of his business.

On February 24, 1937, this plaintiff was directed by his employer to go to the Finkle lease to weld a boiler belonging to the Shell Petroleum Corporation. This company detailed one of its employees, B. E. Jennings, to show plaintiff how to go to reach the place where this work was to be done. Plaintiff and Jennings proceeded to the Finkle lease in a pick-up truck owned by Churchill. They entered the private roadway and proceeded southward to the point where it turns west after passing between the meter house and the slush pond. The roadway had deep ruts in it and the wheels of the pick-up truck broke the gas pipeline laid across the roadway, whereby gas at high pressure was released and reached the fire in the meter house, and caused "a great blaze which caught the clothing of this plaintiff and severely burned and cooked the face and hands and lungs of this plaintiff."

In his petition plaintiff alleged that defendants and each of them were negligent in many particulars which need not presently concern us because, as already stated, this appeal has to do with the question whether plaintiff's injuries are redressable in this action at common law or under the workmen's compensation act.

The litigants are agreed that the answer to this question turns chiefly upon the proper interpretation of G. S. 1935, 44-503, which reads:

"(a) Where any person (in this section referred to as principal) undertakes to execute any work which is a part of his trade or business or which he has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him; and where compensa-

tion is claimed from or proceedings are taken against the principal, then in the application of this act, references to the principal shall be substituted for references to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed. (*b*) Where the principal is liable to pay compensation under this section, he shall be entitled to indemnity from any person who would have been liable to pay compensation to the workman independently of this section, and shall have a cause of action therefor. (*c*) Nothing in this section shall be construed as preventing a workman from recovering compensation under this act from the contractor instead of the principal. (*d*) This section shall not apply to any case where the accident occurred elsewhere than on, in or about the premises on which the principal has undertaken to execute work or which are otherwise under his control or management, or on, in or about the execution of such work under his control or management. (*e*) A principal contractor, when sued by a workman of a subcontractor, shall have the right to implead the subcontractor. (*f*) The principal contractor who pays compensation to a workman of a subcontractor shall have the right to recover over against the subcontractor."

Appellant's interpretation of this statute, as applied to the facts pleaded in plaintiff's petition, is that it, the Shell Petroleum Corporation, was a *principal*, and plaintiff's employer Churchill was a *contractor*, that a contract between principal and contractor for the welding of defendant's boiler had been made, that plaintiff, employee of Churchill, the statutory contractor, had been sent to the premises of the defendant to fix the boiler. Under those circumstances defendant argues that the section of the compensation act quoted above governs the rights and liabilities of the parties.

The workmen's compensation act governs the relationship of defendant to its own employees, of course (G. S. 44-505, 44-507); and defendant's counsel assert that the relationship of plaintiff to his immediate employer, Churchill, was likewise governed by the same act. Counsel for plaintiff say that there is nothing in the record to justify that assertion, which point is apparently well taken. While a "boiler and machine works" which has in its employment a workman capable of welding an engine boiler would probably come under the terms of the statute, G. S. 1935, 44-505, yet we could not make the additional assumption that the Churchill Boiler and Machine Works employed five or more workmen so as to make compulsory its operation under the act. (G. S. 1935, 44-507.) And even if plaintiff and his employer were under the act, the fact would not necessarily bar this action at common law. The statutory provision which governs this point has been revised since our decision in *Swader v. Flour Mills Co.*, 103 Kan. 378, 103 Kan. 703, 176 Pac. 143, but the

right to maintain a common-law action still exists (under regulations) in behalf of a workman (or his employer) against a third-party wrongdoer through whose fault he is injured, notwithstanding the injury occurred under circumstances which would entitle him to compensation from his own employer. (G. S. 1935, 44-504; *Moeser v. Shunk,* 116 Kan. 247, 226 Pac. 784; *Riddle v. Higley Motor Co.,* 122 Kan. 458, 252 Pac. 231; *Jolley v. United Power & Light Corp.,* 131 Kan. 102, 289 Pac. 962.)

Counsel for plaintiff contend that Churchill, plaintiff's employer, was an independent contractor, and consequently that the intricate relationships which G. S. 1935, 44-503, was intended to govern did not exist and that the cited section has no application. What is an independent contractor?

"(3) An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." (Restatement, Agency, § 2.)

In comment to section 403, Restatement of Torts, it is said:

"*a.* The words 'independent contractor' denote any person to whom the construction, rebuilding or repairing of a chattel is entrusted in such a way as to give him charge and control of the details of doing the work, irrespective of whether the work is done gratuitously or is to be paid for by his employer or is in any other way of financial or other benefit to the contractor." (p. 1091.)

This definition and comment accord with our own pronouncements. (*Pottorff v. Mining Co.,* 86 Kan. 774, 122 Pac. 120, syl. ¶ 2; *Maughlelle v. Mining Co.,* 99 Kan. 412, 161 Pac. 907; *Brownrigg v. Allvine Dairy Co.,* 137 Kan. 209, 19 P. 2d 474.)

Tested by this rule, our own cases where the workmen's compensation act was invoked fall into two main classes—first, where it was held that the injured workman was the employee of an independent contractor, and second, where the performance of the injured workman's duty was measurably controlled by the contractee with whom the workman's immediate employer had contracted, or where the workman himself was the contractor but the contractee exercised some measure of control of his work.

Typical of the cases where the injured workman had to look to his own immediate employer, an independent contractor, for compensation and could not hold the contractee liable therefor, was *Farmer v. Purcell,* 109 Kan. 612, 201 Pac. 66, where the owner of a sawmill contracted with a person to take sawdust from a bin as fast as necessary to prevent such accumulation as to delay work and remove it

to a designated place in consideration of a fixed price per hour, and a driver employed by such person was injured while attempting to load a wagon from the bin. It was held that such person was an independent contractor and the driver was not an employee of the mill-owner so as to render him liable under the compensation act.

In *McIlvain v. Oil and Gas Co.*, 110 Kan. 266, 203 Pac. 701, it was held:

"One who contracts to haul oil-and-gas well casing between the place where it is used and the place where it is repaired, and who employs but one workman to assist in performing the labor does not come within the provisions of the workmen's compensation act, although the one for whom the casing is hauled may come within that act." (Syl. ¶ 2.)

Commenting on the McIlvain case, Mr. Justice Burch, in *Southern Surety Co. v. Parsons*, 132 Kan. 355, 357, 295 Pac. 727, said:

"In the McIlvain case the Prairie Oil & Gas Company was engaged in engineering work—drilling an oil well. Earl Blue was employed to haul casing to the well, which was not engineering work, and was not work done on, in, or about the place where the Prairie company was doing engineering work. Blue employed McIlvain and McIlvain was Blue's only employee. McIlvain was injured and sued the Prairie company and Blue. It was held the Prairie company was not liable to pay compensation, although subject to the act, *because Blue was an independent contractor* whose employment had nothing to do with that part of the Prairie company's business which brought it within the act." (Italics ours.)

Among the cases where the injured workman was allowed a claim for compensation against the contractee, passing by his own immediate employer, as authorized by G. S. 1935, 44-503, was *Purkable v. Greenland Oil Co.*, 122 Kan. 720, 253 Pac. 219, the facts and law of which are summarized in the syllabus:

"An oil company engaged in developing mineral resources of leased land and producing oil therefrom, let to an independent contractor a contract to erect a derrick on the land, as an incident to the drilling of an oil well by the company. While the derrick was under construction one of the contractor's workmen fell from it and received injuries which resulted in death. The workman's dependents sued the company for compensation. *Held,* the work of building the derrick was part of the company's business, within the meaning of the subcontracting section of the workmen's compensation act (R. S. 44-503); the accident occurred on premises on which the company had undertaken to execute work, within the meaning of subdivision (*d*) of the section; and the company was liable to the dependents for compensation, under subdivision (*a*) of the section."

Another instructive case to the same effect was *Phoenix Indemnity Co. v. Barton Torpedo Co.*, 137 Kan. 92, 19 P. 2d 739, where it was held:

"Where a petroleum company contracts with an individual to drill an oil well, furnishing him the drilling rig, casing and other equipment and reserving the right to take full charge of the well and the operation thereat and to manage and control the drilling into, shooting and testing the sand when oil-bearing sand is reached by the driller, and requiring the driller to procure an insurance contract under the workmen's compensation law to protect the petroleum company against any right of action, the relation of such parties is respectively that of principal contractor and subcontractor, as distinguished and defined in R. S. 1931 Supp. 44-503." (Syl. ¶ 1.)

Other recent cases where the facts required the application of G. S. 1935, 44-503, were *Williams v. Cities Service Gas Co.,* 139 Kan. 166, 30 P. 2d 97; and *Pribbenow v. Meeker,* 139 Kan. 325, 31 P. 2d 15.

Still another case worthy of special mention was *Weaver v. Shanklin Walnut Co.,* 131 Kan. 771, 293 Pac. 950, where plaintiff was employed by defendant to cut trees at so much per tree. A tree fell on him and broke his leg. His claim to compensation under the statute was resisted on the ground that he was an independent contractor. But the evidence showed, without apparent dispute, that his work was supervised and in part directed by defendant's foreman, consequently it was held that plaintiff's status was that of defendant's workman, and not that of an independent contractor.

In the light of these authorities, it seems clear that Churchill, plaintiff's employer, was an independent contractor. Defendant had no control of Churchill. It was Churchill's job to weld the boiler, and he sent his employee, Bittle, to do the work. It was a single isolated transaction, such as occurs in the business world every day, when one man has a machine which gets out of fix and he calls on another man skilled in repairing such machinery to put it to rights. The status of the person so employed (contracted with) is familiarly designated in the lawbooks as that of an independent contractor. And as Bittle was the employee of the independent contractor, the statute relied on by defendants to replace or supersede the common-law action plaintiff seeks to maintain against defendants has no application.

The demurrer to plaintiff's petition was properly overruled and the judgment is affirmed.