No. 34,500

T. R. LEHMAN, *Appellant*, v. THE GRACE OIL COMPANY and WILL ASHCRAFT (Respondents), and THE BITUMINOUS CASUALTY CORPORATION, *Appellees*.

(98 P. 2d 430)

 Opinion filed January 27, 1940. 

*Charles Hall, Ellis Clark* and *Abraham Weinlood,* all of Hutchinson, for the appellant.

. *C. H. Brooks, Howard T. Fleeson, Carl G. Tebbe, Wayne Coulson* and *Paul R. Kitch,* all of Wichita, for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This is a workmen's compensation case. The compensation commission denied the claim. The district court did likewise and claimant has appealed.

The respondent, the Grace Oil Company, was a copartnership and the owner of an oil and gas lease. The Bituminous Casualty Corporation was the insurance carrier. The respondent, Will Ashcraft, who employed claimant, was engaged in the trade or business of moving buildings. The Grace Oil Company desired to place on the lease a house for a pumper. The house was located in the town of Nickerson. The evidence disclosed the moving trade or business required special skill and equipment. The oil company had no men in its employ who were especially skilled in that trade or business and it did not have necessary facilities and equipment to move houses. It had at no time been engaged in the moving trade or business as such. It had occasionally moved some small buildings which were located on its lease. It employed the respondent, Will Ashcraft, to move the house onto the lease. Claimant previously had been employed by Ashcraft on his moving jobs. He again sought work with Ashcraft and was employed and paid by Ashcraft to assist him in moving the house in question. Claimant was entirely under the supervision and control of Ashcraft. He was detailed to the particular task of staying on the house, while it was being moved along the public highway, for the purpose of lifting telephone wires so as to make them clear the house. When the house had reached a place on a highway just across from the lease, claimant failed to see a telephone wire which crossed the highway and was connected with the toolhouse on the lease. The telephone line belonged to the Sterling Telephone Company. Claimant was thrown to the ground

and injured by this line. The accident occurred on August 7, 1938, and the commission found the injuries incapacitated claimant to do heavy work, but that they were temporary in character and claimant would be handicapped for six months or a year. The evidence disclosed it was a common thing for producers to furnish the pumper a house on the lease and that a home on the lease constituted a part of the operation of the lease. The oil company had designated the location for the building on the lease.

The commissioner, insofar as is material to this appeal, in substance found: Claimant was employed by and was entirely under the supervision and control of Ashcraft, who was an independent contractor; Ashcraft was engaged in the trade or business of "moving buildings," which under the compensation act is engineering work; the moving of buildings was not the trade or business of the Grace Oil Company; the oil company was engaged in the business of getting leases, drilling wells and producing oil; the oil company designated the location for the building on the lease; it was a common thing for producers to furnish a home for a pumper on a lease as a part of the operation of the lease; the oil company is not liable to claimant under the subcontracting section of the act.

The only question presented is whether the Grace Oil Company is liable for compensation to claimant under the pertinent portion of the subcontracting statute, G. S. 1935, 44-503, which provides:

"(a) Where any person (in this section referred to as principal) *undertakes to execute any work which is a part of his trade or business or which he has contracted to perform* and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal, then in the application of this act, references to the principal shall be substituted for references to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed." (Italics ours.)

"(d) This section shall not apply to any case where the accident occurred elsewhere than on, in or about the premises on which the principal has undertaken to execute work or which are otherwise under his control or management, or on, in or about the execution of such work under his control or management."

Appellee contends it is not liable and that the decision of the commissioner and district court should be affirmed on two grounds. The

first ground asserted is that the compensation act applies only to work the principal undertakes to execute which is a part of his trade or business, or to work which the principal has contracted to perform for another (G. S. 1935, 44-503 a, 44-505), and that the oil company is not liable for compensation under either of the two statutory classifications. The second ground upon which appellee relies is that the facts, in any event, bring it squarely within the exception to G. S. 1935, 44-503 (a), provided by subdivision d of that statute.

Appellant concedes Ashcraft was employed by appellee to move the building and that the method or manner of moving the building was entirely under the supervision and control of Ashcraft, and that appellee designated only the location for the building on the lease. Appellant also concedes claimant was employed solely by, was paid by and was entirely under the supervision and control of Ashcraft. In view of those conceded facts Ashcraft was clearly an independent contractor. (*Pottorff v. Mining Co.*, 86 Kan. 774, 779-781, 122 Pac. 120; *Bittle v. Shell Petroleum Corp.*, 147 Kan. 227, 231, 75 P. 2d 829; *Mendel v. Fort Scott Hydraulic Cement Co.*, 147 Kan. 719, 723, 78 P. 2d 868.)

Is appellees' first contention correct? Appellant contends it is not, and insists that under the provisions of G. S. 1935, 44-503 (a), it is immaterial whether Ashcraft was an independent contractor or whether the trade or business in which Ashcraft was engaged was the trade or business of the oil company, if the work in which claimant was engaged facilitated or advanced the interests of the trade or business in which the oil company was engaged. In support of that contention appellant relies principally upon decisions in *Spencer v. Marshall*, 107 Kan. 264, 191 Pac. 468; *Purkable v. Greenland Oil Co.*, 122 Kan. 720, 253 Pac. 219, and *Fairchild v. Prairie Oil & Gas Co.*, 138 Kan. 651, 27 P. 2d 209. Do those decisions support appellant's contention? In the last case it was held:

"Where an employee receives injuries while employed where he may reasonably be while performing his usual duties or other acts incidental thereto, which other acts are fairly connected with, and, in the judgment of the employee, are for the protection of the property and for the benefit of the business of the employer and are not so foreign to his usual duties as to amount to an abandonment thereof, such injuries are sustained in and arise out of his usual course of employment." (Syl. ¶ 1.)

In that case no independent contractor or subcontractor was involved, the accident occurred on the lease and the only question was whether the workman, a pumper on the lease, in assisting third

parties in felling a tree had so far abandoned his usual duties that it could be said the injuries were not sustained in and did not arise out of his usual course of employment. In the instant case it is conceded the workman was not employed by the oil company and hence there could be no question presented as to whether the injuries were sustained in and arose out of his usual course of employment with that company. Here the workman was employed by an independent contractor who was engaged in the trade or business of "moving buildings," which trade or business is expressly covered by the act and defined in the act as constituting engineering work. (G. S. 1935, 44-508 [g].)

In the Spencer case claimant was injured *while working on machinery which was then being used in drilling for gas or oil on the lease.* The evidence was not sufficient to establish the fact that plaintiff when injured was employed by a subcontractor. The evidence was, however, sufficient to establish the fact that appellants were operating the lease and that claimant was working for them. It was held appellants were liable for compensation, and further, that even if the evidence had disclosed claimant was working for a subcontractor, appellants would have been liable to them for compensation under subdivision (a) of the subcontractor section (G. S. 1915, § 5898), which was the same as subdivision (a) of G. S. 1935, 44-503. It will be observed claimant was working on the lease itself and assisting in the actual drilling of a well, which was the trade or business of the operators of the lease.

In the Purkable case, especially relied upon by claimant, it was held:

"An oil company engaged in developing mineral resources of leased land and producing oil therefrom, let to an *independent contractor* a contract to erect a derrick on the land, *as an incident to the drilling of an oil well by the company.* While the derrick was under construction one of the contractor's workmen fell from it and received injuries which resulted in death. The workman's dependents sued the company for compensation. *Held,* the work of building the derrick *was part of the company's business, within the meaning of the subcontracting section of the workmen's compensation act (R. S. 44-503); the accident occurred on premises on which the company had undertaken to execute work, within the meaning of subdivision (d) of the section;* and the company was liable to the dependents for compensation, under subdivision (a) of the section." (Syl.) (Italics ours.)

After analyzing the facts the court concluded:

"The result is, *the business of the company was operating for and producing oil, the work of building the derrick was part of its business,* and the accident

occurred *on premises on which the company had undertaken to execute work under its management and control and a part of its business."* (p. 723.) (Italics ours.)

It will be noted the conclusion rested upon the two italicized factors. The factors were first, that the work of the independent contractor in building the derrick was a part of the company's business within the meaning of the subcontracting statute, and second, that the accident occurred under circumstances which also made the oil company liable under the provisions of subdivision (*d*) of the statute. In concluding the opinion, the court said:

"In this instance, the work of building the derrick was part of the company's business *as a necessary incident to prosecution of its primary business of producing oil."* (p. 724.) (Italics ours.)

There are cases other than those cited by appellant which bear directly upon the first contention of the parties to which we shall refer presently. Before doing so, however, it is obvious the cases cited by appellant are not authority for his contention that it is immaterial whether work is performed by an independent contractor, and whether that work is any part of the trade or business of the principal which brought the principal within the act. They in fact disclose the contrary.

The principal, under the subcontractors statute, is not liable for injuries to the workman of an independent contractor simply because the work of the latter's employee may facilitate the operation of the lease, where the work is no part of the trade or business of the principal but constitutes an entirely separate and distinct trade or business. In *Bittle v. Shell Petroleum Corp.,* 147 Kan. 227, 75 P. 2d 829, it was said:

"In the light of these authorities, it seems clear that Churchill, plaintiff's employer, was an independent contractor. Defendant had no control of Churchill. It was Churchill's job to weld the boiler, and he sent his employee, Bittle, to do the work. It was a single isolated transaction, such as occurs in the business world every day, when one man has a machine which gets out of fix and he calls on another man skilled in repairing such machinery to put it to rights. The status of the person so employed (contracted with) is familiarly designated in the lawbooks as that of an independent contractor. And as Bittle was the employee of the independent contractor, the statute relied on by defendants to replace or supersede the common-law action plaintiff seeks to maintain against defendants has no application." (p. 233.)

In *Setter v. Wilson,* 140 Kan. 447, 37 P. 2d 50, it was held:

"The workmen's compensation act was intended to apply only to employment in the trade or business of the employer and, if the trade or business of

the employer does not bring him within the terms of the act, he has no liability thereunder."

"The mere owning of a house or building, maintaining it and keeping it in repair so that it may produce an income, is not sufficient to constitute a trade or business, but such transactions, at most, only amount to a trade or business, within the meaning of the workmen's compensation act, when they are carried on to such an extent as to require a substantial and habitual devotion of time and labor to their management and operation." (Syl. ¶¶ 1, 2.)

In the opinion it was stated:

"In R. S. 1933 Supp. 44-505, it is stated: 'That this act shall apply only to employment in the course of the employer's trade or business in the following hazardous employment,' etc., and in R. S. 1933 Supp. 44-503, the act states: 'Where any person . . . undertakes to execute any work which is a part of his trade or business,' etc. It would, thus appear that in order for the act to apply, the employment must be in the employer's trade or business." (p. 449.)

In the more recent case of *Shrout v. Lewis,* 147 Kan. 592, 77 P. 2d 973, we held:

"In order to render an employer liable for compensation to an injured workman the injury must occur in a trade or business of the employer." (Syl. ¶ 2.)

In the opinion we said:

"In order to bring an employer within the act it is not enough that the work at which the laborer is employed is covered by the act, but it is also necessary that the work shall be a part of his employer's trade or business. (G. S. 1935, 44-503, 44-505; *Setter v. Wilson,* 140 Kan. 447, 449, 37 P. 2d 50.) In other words, it is the purpose of workmen's compensation acts to place the burden of compensation for accidents to employees upon the industry rather than upon the individual employer." (p. 594.)

In *Bittle v. Shell Petroleum Corp.,* supra, plaintiff, an employee of an independent contractor, brought a common-law action for damages against the owner and operator of the lease. The petition disclosed the injuries resulted on defendant's private road on the lease while plaintiff was riding on a truck to a place on the lease where he had to weld a boiler. The truck in which plaintiff was riding struck and broke a gas pipe line of the co-defendant, the Kansas Power & Light Company, which was engaged in transporting natural gas to the defendant, Shell Petroleum Corporation. The gas was ignited, owing to a fire in a near-by meter house, and plaintiff was severely burned. The defendant, Shell Petroleum Corporation, demurred to the petition on the ground the petition disclosed plaintiff was an employee of an independent contractor and that the latter had been employed by defendant to weld the boiler. In sup-

port of the demurrer defendant contended plaintiff's remedy was under the subcontracting provision (G. S. 1935, 44-503) of the compensation act. The demurrer to the petition was overruled and the ruling was sustained by this court. We there held:

"Under the facts stated in the petition and summarized in the opinion, plaintiff's immediate employer was an independent contractor; and plaintiff's legal right of redress against defendant was not governed by the workmen's compensation act." (Syl. ¶ 2.)

In the course of the opinion the court reviewed numerous decisions touching the liability of the principal under this identical subcontracting provision of our compensation act, in which independent contractors were involved. After defining the term "independent contractor," the court said:

"Tested by this rule, our own cases where the workmen's compensation act was invoked fall into two main classes—first, where it was held that the injured workman was the employee of an independent contractor, duty was measurably controlled by the contractee with whom the workmen's immediate employer had contracted, or where the workman himself was the contractor but the contractee exercised some measure of control of his work.

"Typical of the cases where the injured workman had to look to his own immediate employer, an independent contractor, for compensation and could not hold the contractee liable therefor, was *Farmer v. Purcell*, 109 Kan. 612, 201 Pac. 66, where the owner of a sawmill contracted with a person to take sawdust from a bin as fast as necessary to prevent such accumulation as to delay work and remove it to a designated place in consideration of a fixed price per hour,' and a driver employed by such person was injured while attempting to load a wagon from the bin. It was held that such person was an independent contractor and the driver was not an employee of the mill owner so as to render him liable under the compensation act.

"In *McIlvain v. Oil and Gas Co.,* 110 Kan. 266, 203 Pac. 701, it was held:

" 'One who contracts to haul oil-and-gas-well casing between the place where it is used and the place where it is repaired, and who employs but one workman to assist in performnig the labor does not come within the provisions of the workmen's compensation act, although the one for whom the casing is hauled may come within that act.' (Syl. ¶ 2.)

"Commenting on the McIlvain case, Mr. Justice Burch, in *Southern Surety Co. v. Parsons,* 132 Kan. 355, 357, 295 Pac. 727, said:

" 'In the McIlvain case the Prairie Oil & Gas Company was engaged in engineering work—drilling an oil well. Earl Blue was employed to haul casing to the well, which was not engineering work, and was not work done on, in, or about the place where the Prairie company was doing engineering work. Blue employed McIlvain and McIlvain was Blue's only employee. McIlvain was injured and sued the Prairie company and Blue. It was held the Prairie company was not liable to pay compensation, although subject to the act, *because Blue was an independent contractor* whose employment had nothing to do with that part of the Prairie company's business which brought it within the act.' (Italics ours.)" (p. 231.)

What did the trade or business of the independent contractor in the instant case, namely, that of "moving buildings," have to do with the trade or business of the Grace Oil Company, which brought the latter within the act and which trade or business was the operating of oil and gas leases? Obviously nothing. Appellant reminds us the evidence disclosed it was common for lease operators to put a house on the lease for the pumper, and that a home on the lease constituted a part of the operating facilities of the lease. The trouble with that contention is the house was not on the lease, it had not yet become a home for the pumper, it was not being employed as one of the facilities for operating the lease and claimant was not injured in the operation of the lease. He was injured while engaged in an entirely different trade or business of an independent contractor, namely, that of moving a building, which building ultimately was to become a part of the operating facilities of the lease. In other words claimant was not injured in work which was a necessary incident *of* operation, but in specialized work which was designed to equip the lease *for* operation. That trade or business of the independent contractor, according to the evidence, was a specialized trade or business which, first, was no part of the trade or business of the principal, the oil company, and second, was not work which the principal had contracted to perform for anyone. A careful examination of subdivision (*a*) of the statute will clearly disclose the principal is not liable for compensation unless the work falls within one of the two classifications above stated. The court of appeals of Louisiana in *Horrell et al. v. Gulf & Valley, etc., Inc.,* 15 La. App. 603, 103 So. 709 (Dec. 15, 1930), had occasion to pass upon this identical question, and under a statute (¶ 1, § 6 of its act) identically the same as subdivision (*a*) of our statute, except that the Louisiana statute contains also the word "occupation," in addition to the words "trade or business." In that case the workman died from burns received while working for an independent contractor in constructing furnaces for an oil refinery. His father brought a common-law action for damages against the refinery. Defendant contended redress, if any, was under the provisions of the above section of the compensation act. That court, as did this court in the Bittle case, *supra,* denied the defense upon the ground the compensation statute gave the workman no redress against the refining company and hence was not applicable. The court held:

"General employer or principal may employ independent contractor to do special work, not generally done directly by others in same line of business, without becoming liable for injuries to or death of contractor's employees.

"Brick work on furnaces being constructed by independent contractor held not part of oil refining company's trade, business, or occupation so as to render it liable for compensation for death of contractor's employee; remedy being in tort. (Act No. 20 of 1914, sec. 6[1]; Civ. Code, art. 2315.)" (Syl. ¶¶ 11, 12.)

The opinion in the Louisiana case is so clear in its analysis of the statute involved and in its application to the facts that we are impelled to quote from it somewhat at length. It was there said:

"In considering the question raised by this contention, we at once notice that it is not all work which the principal may require that the act prevents his contracting away without retention of compensation liability, *but only such as is a part of his trade, business, or occupation, or which he may have contracted to perform for some one else.*

"It is, we believe, quite plain that a manufacturing concern, upon organization, may contract with an independent contractor for the erection of its factory building without retaining liability under the compensation act to employees of the independent contractor who undertakes the construction. It is no part of the trade, business, or occupation of the manufacturing concern to erect its factory building. Its business is to operate it after its erection.

"On the other hand, it is clear that, after the factory is completed and is in operation, the principal may not employ an independent contractor to undertake any part of the business of operating the factory and thus escape liability in compensation to the employees actually engaged in carrying out the work undertaken by the independent contractor. For instance, if defendant here had employed Horrell to furnish the necessary labor to operate the boilers, it is quite evident that Horrell's employees would, under the provisions of section 6 of the act, be entitled to look to defendant for compensation in the event of injury. We thus see that, if the original construction work is not a part of the business of the principal, that work may be contracted away, whereas the operation of the factory after construction is completed, being a part of the business of the principal, may not be so contracted away without the retention of compensation liability.

"If the principal may contract with the independent contractor for original construction, we see no reason why he may not contract for additional necessary construction, or reconstruction later on. If the work contracted for is within the category of operation, then, of course, it may not be contracted for except under the conditions imposed by section 6." (p. 607.) (Italics ours.)

Decisions might be cited from other courts which have given a statute substantially the same as ours the same construction, but we do not deem that necessary. We think the commissioner and the district court correctly ruled the work of the independent contractor, by whom claimant had been employed, was not the trade or business of the Grace Oil Company and that the oil company

was not liable under the statute. It is not contended the oil company had contracted to perform the work of moving the building. That disposes of the contention with respect to subdivision (*a*) of the statute. Before concluding the discussion of that portion of the statute it may be helpful for the reader to note the case of *Pribbenow v. Meeker*, 139 Kan. 325, 31 P. 2d 15. That case clearly illustrates the liability, under subdivision (*a*), of a contractor, as a principal, for injuries sustained by an employee of a subcontractor where the former had contracted to perform completely and fully certain work for another. It was the agreement of the contractor to perform the services for another which brought the contractor squarely under the statute as a principal in the Pribbenow case.

Appellee further contends it is not liable because, under the facts, it is expressly relieved from liability by subdivision (*d*) of the statute. Appellant has not briefed or argued that contention. He contends the commissioner and the trial court ruled only on the first proposition heretofore discussed. Appellee states its second contention was made before both the commissioner and the trial court. That statement is not denied by appellant. Moreover, the record of the commissioner, among other things, discloses:

"The evidence shows that Will Ashcraft was an independent contractor and that the work being performed for the Grace Oil Company was not the trade or business of the Grace Oil Company, *and the examiner is of the opinion that the Grace Oil Company is not liable to the claimant for compensation under the subcontracting section of the workmen's compensation act.*" (Italics ours.)

Subdivision (*d*) is, of course, a part of the statute in question. In view of the record we shall assume the commissioner and the district court considered all pertinent parts of the statute. We, of course, are not permitted to ignore statutes or portions thereof which disclose or clearly tend to reflect the legislative will. Touching subdivision (*d*), it is sufficient to say that in the light of views already expressed herein, there could be no liability of the oil company under that portion of the statute, first, because the oil company did not, under its control and management, undertake to move the house over the public highways between the city of Nickerson and the lease; and second, since under the facts the oil company is not liable under subdivision (*a*), manifestly it could not be liable under subdivision (*d*), which is in the nature of an exception to its liability under subdivision (*a*).

The judgment is affirmed.