Frank L. GASTON, Plaintiff-Appellant,

v.

COOPERATIVE FARM CHEMICALS AS-SOCIATION, a Corporation, et al., Defendants-Respondents.

No. 54206.

Supreme Court of Missouri, Division No. 1.

Feb. 9, 1970.

———◆———

Thomas A. Sweeny, Kansas City, for plaintiff-appellant; Popham, Popham, Conway, Sweeny & Fremont, Kansas City, of counsel.

Lyman Field, Kansas City, for defendants-respondents; Rogers, Field, Gentry, Benjamin & Robertson, Kansas City, of counsel.

HOUSER, Commissioner.

In the Circuit Court of Clay County, Missouri Frank L. Gaston filed a common-law suit for $100,000 damages against Cooperative Farm Chemicals Association (hereinafter "Coop"), a Kansas corporation, and other Kansas corporations, charging that defendants negligently inflicted personal injuries upon him. Motions for summary judgment, filed by defendants, were sustained. Plaintiff Gaston has appealed.

The question on appeal: whether it has been shown by unassailable proof, as a matter of law, that plaintiff was a statutory employee of Coop under the Kansas Compensation Workmen's Act [1] at the time of his injury, which occurred on Coop's premises in the State of Kansas on October 19, 1961. If so plaintiff's remedy is exclusively under the workmen's compensation act and he cannot maintain a common-law action for damages against a party from whom he could have recovered compensation under the act. Hanna v. CRA, Inc., 196 Kan. 156, 409 P.2d 786 [1].

The case was submitted on pleadings, stipulations, requests for admissions and answers containing admissions and denials, the deposition of one witness (Coop's general manager), and written contracts between Coop and its contractor Chemico, and between Chemico and its subcontractor Jamar-Olman Construction Company (plaintiff's immediate employer).

---

1. The pertinent subsections of Kansas Statutes Annotated § 44–503 follow: "(a) Where any person (in this section referred to as principal) undertakes to execute any work which is a part of his trade or business or which he has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal, then in the application of this act, references to the principal shall be substituted for references to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed."

"(d) This section shall not apply to any case where the accident occurred elsewhere than on, in or about the premises on which the principal has undertaken to execute work or which are otherwise under his control or management, or on, in or about the execution of such work under his control or management."

Coop, formed for the corporate purpose of engaging "in any activity in connection with the manufacture, mixing, processing, storage, distribution and handling of agricultural chemicals and fertilizers," desired to build a facility for the production of urea solution on its premises near Lawrence, Kansas. Urea is one of the farm chemicals manufactured and produced on its premises by Coop in carrying out its business of manufacturing farm chemicals. Plaintiff admitted that urea or urea solution cannot be manufactured or produced for profit without the use of a vessel which utilizes pressure in the manufacturing process (which pressure vessels are called "autoclaves" or "reactors") but inconsistently denied that such equipment is necessary to and an integral part of the manufacture and production of urea, and denied that a boiler is a necessary feature of an autoclave. Concededly Coop was not in the business of building urea plants.

Coop entered into a contract with Chemico, whose business it was to design and construct autoclaves, to design, supply the equipment for and transport and deliver to the site, erect and install and supervise the initial operation of a facility for the production of urea solution, and to furnish supervision, labor, tools, etc. to complete the work, for a contract price of $726,500. Until the work was accepted title to and care, custody and control of all materials, equipment and supplies were to remain in Chemico.

Chemico entered into a subcontract with Jamar-Olman Construction Company to do the insulation work on a certain urea autoclave on Coop's premises, and it was in the course of the performance of that work that plaintiff, an employee of Jamar-Olman, was injured. Jamar-Olman agreed to save Chemico and Coop harmless from all claims and actions of any kind arising from or incidental to the performance by the subcontractor and agreed to and did carry workmen's compensation insurance coverage on its employees. On the date in question Jamar-Olman, Coop and plaintiff were operating and working under and subject to the provisions of the Kansas Workmen's Compensation Act.

Plaintiff, directly employed by Jamar-Olman as indicated, was engaged in the work of insulating a new and separate autoclave on Coop's premises under his employer's contract with Chemico. This was an autoclave in the process of being created and completed by Chemico. The autoclave had been undergoing testing operations, and had not been accepted from Chemico by Coop. It was still under the custody, care and control of Chemico, to the extent that care, custody and control were reserved under the terms and conditions of the contract between Chemico and Coop. Plaintiff denied that this autoclave was in operation as a constituent part of Coop's plant. Coop had not serviced, maintained or operated this autoclave.

Plaintiff left his insulation work and was walking toward a trailer when a safety valve blew out on another autoclave on Coop's premises. A hot ammoniated mixture was released as a result of which plaintiff sustained injuries. The autoclave from which the hot mixture escaped was not the autoclave which was the subject of the contract between Chemico and Jamar-Olman. Plaintiff made a claim against his employer Jamar-Olman and its insurer for workmen's compensation for the injuries thus sustained and was paid compensation therefor under the act.

Coop denied that the design and construction of autoclaves to be used in urea plants, and the operation of urea plants, are separate and independent business operations. Coop's answer claimed that Coop had the power and authority under its articles of incorporation to build such plants for itself as a part of its business. Coop's answers to requests for admissions stated that Coop had employees on its regular payroll who possessed the knowledge and necessary skill to design and construct autoclaves and who were capable of doing the type of work (insulating an

autoclave) in which plaintiff was engaged, and had a regular maintenance crew on the date in question which, as a part of its duties, did insulation work such as plaintiff was doing. Coop, however, was not in the business of building urea plants for others, had no employees on its regular payroll hired for the purpose of constructing the autoclaves which were the subject of the contractual arrangements between Coop and Chemico, and Coop's employees did not actually do any insulating work on the autoclave upon which plaintiff was working. No direct employee of Coop had worked on, maintained, serviced or repaired autoclaves prior to the date of plaintiff's injuries, or had ever constructed, erected or installed an autoclave of the type referred to in plaintiff's petition. In practice Coop contracted with independent contractors for such work.

Coop's general manager testified that when Coop commenced doing business in 1955 it did not use autoclaves; that its first autoclaves were built under a 1958 contract with Chemico; that Coop did not then have the facilities or knowledge to construct a urea plant; that Coop did not in any way undertake the construction of the original urea plant or any of the autoclaves; that on the date plaintiff was injured he did not think that Coop had employees with the knowledge, know-how and equipment to modify and redesign its plant; and "[t]hat was the reason we contracted for this work."

Appellant denies the applicability of the Kansas Workmen's Compensation Act, Chapter 44, Article 5, Kansas Statutes Annotated, on these grounds: first, that there was no employer-employee relationship between plaintiff and the alleged principal, Coop; no contractual relationship between his immediate employer Jamar-Olman and Coop, and no evidence that Coop controlled or had the right to control appellant's activities; second, that assuming there was a contractual relationship the court erred in giving summary judgment for defendants because Coop was not a "principal"

within the terms of K.S.A. § 44–503, and had not undertaken to execute any work which was a part of its trade or business.

■ On the first point, appellant argues that absent an employer-employee relationship between Coop and appellant the latter cannot be barred from his common-law action on the ground that he was a statutory employee, because rights under the workmen's compensation act arise out of and are dependent upon the existence of such a contract. This overlooks the fact that the law supplies the necessary contractual nexus between principal and employee of an independent contractor (or subcontractor) if the facts and circumstances bring the case within the ambit of the statute relating to statutory employees. "The statute was enacted for the very purpose of giving employees of the contractor remedy against the principal." Lessley v. Kansas Power & Light Co., 171 Kan. 197, 231 P.2d 239, 246, quoting from Purkable v. Greenland Oil Co., 122 Kan. 720, 253 P. 219. The statute is equally applicable to employees of subcontractors. Lessley v. Kansas Power & Light Co., supra; 231 P.2d, l. c. 245; Spencer v. Marshall, 107 Kan. 264, 191 P. 468.

■ In determining whether the case comes within the provisions of K.S.A. § 44–503 the Kansas law controls since the accident occurred in that state. Kansas courts do not regard a single fact or circumstance as conclusive but look to all the facts and circumstances involved in the particular case. Atwell v. Maxwell Bridge Co., 196 Kan. 219, 409 P.2d 994, 998 [4]; Durnil v. Grant, 187 Kan. 327, 356 P.2d 872 [6]; Bright v. Bragg, 175 Kan. 404, 264 P.2d 494.

■ Since Coop undertook to have work executed on its premises by contracting with Chemico, which in turn contracted with Jamar-Olman (plaintiff's immediate employer) for the performance of a part of its contract, we find no difficulty in identifying Coop as the "principal" with-

in the wording of the statute. The decisive question is whether the work to be performed under the subcontract is part of Coop's "trade or business." Watson v. W. S. Dickey Clay Mfg. Co., (1969) 202 Kan. 366, 450 P.2d 10, 17. Under the Kansas decisions the key question in determining whether K.S.A. § 44–503 has application in a case of this kind is "whether the work undertaken by the contractee is a part of the regular trade or business of the contractor or, in other words, whose work is being done?" Hacker v. Brookover Feed Yard, Inc., (1969) 202 Kan. 582, 451 P.2d 506, 510 [2]. In considering the word "work" as used in the statute we are concerned here with the work of installing a urea plant and are not considering it in the narrow sense of the particular phase of the work being done at the time of the injury (insulating) or the particular physical act which Gaston was performing at the precise moment of injury (walking toward a trailer).

■ The Kansas Supreme Court "has laid down two rather definite tests by which to determine whether the work covered by a contract is part of the principal's trade or business, i. e., (1) is the work being performed by the independent contractor and the injured employee necessarily inherent in and an integral part of the principal's trade or business? (2) is the work being performed by the independent contractor and the injured employee such as would ordinarily have been done by the employees of the principal?

■ "If either of the foregoing questions is answered in the affirmative the work being done is part of the principal's 'trade or business,' and the injured employee's sole remedy against the principal is under the Workmen's Compensation Act." Hanna v. CRA, Inc., (1966) 196 Kan. 156, 409 P.2d 786, 789 [2].

Plaintiff relies on Hanna v. CRA, Inc., supra; Horrell v. Gulf & Valley Cotton Oil Co., 15 La.App. 603, 131 So. 709 (quoted from and cited with approval in Lehman v. Grace Oil Co., 151 Kan. 145, 98 P. 2d 430); Hataway v. Proctor & Gamble Mfg. Co., 195 Kan. 335, 405 P.2d 350; Bittle v. Shell Petroleum Corp., 147 Kan. 227, 75 P.2d 829; and Truhlicka v. Beech Aircraft Corp., 162 Kan. 535, 178 P.2d 252. Defendant Coop counts on the Hataway and Hanna cases, supra, and Purkable v. Greenland Oil Co., supra; Williams v. Cities Service Gas Co., 139 Kan. 166, 30 P.2d 97; Hoffman v. Cudahy Packing Co., 161 Kan. 345, 167 P.2d 613; Lessley v. Kansas Power & Light Co., supra; and Primm v. Kansas Power & Light Co., 173 Kan. 443, 249 P.2d 647.

■ An examination of these and many other Kansas decisions leads us to the conclusion that the construction and installation of a urea plant is not work which is a part of the trade or business of Coop; that plaintiff was not a statutory employee of Coop and is not barred on that ground from maintaining this common-law action against Coop.

Hataway v. Proctor & Gamble Mfg. Co., supra, is instructive. Hataway was employed by an independent contractor with whom Proctor & Gamble had a construction contract to extend and add to its Tide Department. To expedite Hataway's travel from one location to another on defendant's premises Hataway was furnished a bicycle by his immediate employer. Hataway was seriously injured by the operation of a fork lift by Proctor & Gamble's operator, as he was riding past the fork lift on the bicycle. Hataway brought a common-law action against Proctor & Gamble based on negligence. His action was dismissed on motion in a summary judgment procedure. The Kansas Supreme Court reversed the judgment and remanded the case for trial of the tort action for damages. Proctor & Gamble's charter gave it corporate power to manufacture, refine, treat, buy, sell and deal in soaps, etc. It did not authorize Proctor & Gamble to construct buildings. After quoting from the defendant's charter powers and defining "trade or business," the Kansas Su-

preme Court cited and relied upon the previous Kansas decision of Lehman v. Grace Oil Co., supra, which in turn cited and relied heavily upon the Louisiana case of Horrell v. Gulf & Valley Cotton Oil Co., supra. In Horrell an employee of an independent contractor died from burns received while doing brick work under a contract for the construction of furnaces for an oil refining company. That work was held not part of the latter's trade, business or occupation so as to render it liable for compensation for the death of the contractor's employee. That court said: "It is no part of the trade, business, or occupation of the manufacturing concern to erect its factory building. Its business is to operate it after its erection." 131 So., 1. c. 712. The Louisiana court pointed out that a manufacturing concern, upon organization, may contract with an independent contractor for the erection of its factory building without liability to employees of the independent contractor under the workmen's compensation act, but after the factory is completed and in operation it may not employ an independent contractor to undertake any part of its business of operating the factory and thus escape such liability; that the original construction is not a part of the business of the principal and may be contracted away, and that the principal may also contract for additional necessary construction or reconstruction later on, without incurring such liability. The court in Hataway also cited and quoted with approval a statement in Massolini v. Driscoll, 114 Conn. 546, 159 A. 480, that the word "business" is a much broader term than "trade" and is used broadly to signify that which engages or occupies time, attention or labor "as a principal serious concern or interest." Applying these principles to Hataway's case the Kansas court concluded that it was the independent contractor's business to construct the building for the Tide addition to the Proctor and Gamble plant and "it was the latter's business to operate the Tide addition after its erection." 405 P.2d, 1. c. 354.

In like manner, the corporate charter of Coop empowered it to manufacture, mix, process, store, distribute and handle agricultural chemicals and fertilizers but (contrary to Coop's claim) its charter did not authorize Coop to build, construct or install plants designed to manufacture these products. Coop was not in the business of constructing or installing urea plants; such work was not "the principal serious concern or interest" of Coop. Indeed, such work had never been the concern of Coop, which had never constructed, erected, installed, worked on, maintained, serviced or repaired an autoclave. Coop was in the business of operating manufacturing plants after they were constructed by others. Only after the urea plant had been completely constructed, installed and erected; after satisfactory testing operations had been conducted; after Coop's employees had received instructions and had become acquainted with the operation of the plant, and after it had been accepted by Coop, would it become the business of Coop to operate the plant. Until that time arrived Chemico reserved full control over the installation. It was Chemico's business to construct and install the urea plant. That is what it was hired for in this case. Through its contract with Chemico it was the business of Jamar-Olman to forward a part of that work by doing the insulation work.

■ Under the ruling Kansas decisions the work being performed by the subcontractor of the independent contractor and the injured employee was not necessarily inherent in and an integral part of the principal's trade or business.

With respect to question (2): it affirmatively appears that the work being performed was not such as ordinarily would have been performed by Coop's employees. Coop throughout its brief and argument emphasizes that it had on its regular payroll employees possessed of the necessary knowledge and skill to design and construct autoclaves and capable of doing insulation

work, but as pointed out in Lessley v. Kansas Power & Light Co., supra, whether the principal possessed adequate facilities to carry on the work covered by the terms of the contract, is "of little consequence." 231 P.2d, l. c. 246 [9]. As we have said, this case is not to be decided on the basis of the narrow question as to what particular phase of the work (insulation) was being done at time of injury, and we construe the word "work" in this case to mean the construction and installation of a urea plant, which it was clearly demonstrated was not only not ordinarily but never performed by Coop's employees. In Hataway the Kansas court, on this phase of the case, concluded that "Insofar as the record discloses the construction of the Tide Building was not work which the manager of the Proctor and Gamble soap company would ordinarily have done through employees of the business of manufacturing soaps and detergents." 405 P.2d, l. c. 354. The parallel is obvious.

Paraphrasing the language of the Kansas case of Lehman v. Grace Oil Co., supra, plaintiff was not injured in the operation of a plant manufacturing agricultural chemicals. He was injured while engaged in an entirely different trade or business of an independent contractor, namely, that of constructing and installing a urea plant, which plant was ultimately to become a part of the manufacturing facilities of Coop. He was not injured in work which was a necessary incident of this operation, but in specialized work which was designed to equip the premises for the operation of manufacturing urea.

The several cases on which Coop confidently relies are not controlling. The Hataway opinion distinguished Lessley v. Kansas Power & Light Co., supra, which is the foundation stone of Coop's argument, on the ground that the corporate charter of the power and light company specifically authorized it to build and construct plants and powerhouses. Furthermore, the opinion in Lessley, 231 P.2d, l. c. 245, reveals that on the date Lessley was

injured and at the time and place of his injury he was working on premises which were *under the sole and exclusive control, care and operation of the principal,* in contrast to the instant situation in which by contract there was reserved to Chemico's employees "free and uninterrupted access to the area required for the performance of the work," and until the work was accepted title to, and supervision of, the autoclave, and "the care, custody and control of all materials, equipment and supplies of the Plant" by contract was to remain in Chemico. See subdivision (d) of K.S.A. § 44–503.[1] These same considerations distinguish Primm v. Kansas Power & Light Co., supra, which was a companion case to Lessley.

Purkable v. Greenland Oil Company, supra, is to be distinguished on the ground that the principal required by the decision to furnish workmen's compensation practically admitted the essential elements necessary to bring K.S.A. § 44–503 into operation. "It was admitted at the trial that the work of drilling a well, to which building of the derrick was an incident, was being conducted by the company. Aside from the fact that the subject is one of common knowledge, it was a fair inference from the testimony and the admissions that, as the court found, an oil well derrick is a part of the necessary equipment for drilling an oil well, and construction of such a derrick is a part of the business or work of drilling an oil well." 253 P., l. c. 220. Furthermore, it was admitted that the work was being done upon premises under the defendant's management and control.

Damaging admissions differentiate Hoffman v. Cudahy Packing Co., supra. In that case plaintiff's motion to strike defendant's answer, in which defendant pleaded that plaintiff was a statutory employee, was treated as a demurrer so the facts pleaded in the answer stood admitted. Among other facts thus admitted, defendant had undertaken to keep and have the extension bell which plaintiff was repairing when injured kept in working order "as a part of

the operation of its [the defendant's] trade and business," and the premises involved were at the time of the accident "under the control and management of the defendant in its said meat packing house business." 167 P.2d, l. c. 616.

What the court said in the opinion in Williams v. Cities Service Gas Co., supra, is of little help in deciding the case before us. There an employee of a contractor engaged to dig a ditch for a pipeline company was held to be an employee of the pipeline company, with little discussion of the tests to be applied, apparently in full reliance on the similarity of the case to Purkable v. Greenland Oil Co., supra.

Coop has not shown by unassailable proof, as a matter of law, that plaintiff and Coop bore the relationship of statutory employer and employee to each other, and plaintiff is not to be held to the consequences of that status.

Since this case does not come within the provisions of subdivision (a) of K.S.A. § 44–503, we need not further consider appellant's contention that it comes within the exception provided in subdivision (d). "[S]ince under the facts [Coop] is not liable under subdivision (a), manifestly it could not be liable under subdivision (d), which is in the nature of an exception to its liability under subdivision (a)." Lehman v. Grace Oil Co., supra, 98 P.2d, l. c. 436.

Judgment reversed and cause remanded with directions to overrule the motions for summary judgment and proceed with the common-law action for damages in accordance with the views herein expressed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

SEILER, P. J., HOLMAN, J., and HOWARD, Special Judge, concur.

STORCKMAN, J., not sitting.